**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2023
_____

LOUIS ROSSI,
                              Appellant

v.

JOHN QUARMLEY; JAMES MORTON, III;
PRINCIPIA VENTURES, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-12-cv-07270)
District Judge:  Hon. James Knoll Gardner

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 12, 2015

Before:  CHAGARES, JORDAN, and VANASKIE, <u>Circuit Judges</u>.

(Filed: March 19, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full7 court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Louis Rossi appeals the District Court's grant of the defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Rossi's claim under Section 10(b) of the Securities Exchange Act of 1934 ("SEA" or "the Act"), 15 U.S.C. §§ 78a – 78pp, and his pendent state-law claims. Rossi argues that the District Court erred by dismissing the action on the ground that Rossi failed to plead that his interest in the group Principia Ventures LLC ("Principia") was an investment contract, and thus a security under the SEA. For the reasons that follow, we will affirm.

I.[1]

We write exclusively for the parties and therefore set forth only the facts necessary to our disposition.[2] Rossi, along with long-time business associates John Quarmley and James Morton, III, established Principia, a company through which the three sought to "engage in the business of owning and managing manufacturing and service businesses." Appendix ("App.") 88. Quarmley, Morton, and Rossi were "serial entrepreneurs," who

_____

[1] The District Court exercised jurisdiction over Rossi's securities claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] We exercise plenary review over a district court's decision to grant a motion to dismiss under Rule 12(b)(6). See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). Like the District Court, we accept as true all factual allegations in the complaint and we construe the complaint in the light most favorable to the plaintiff. See id. We consider only facts alleged in the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). We affirm a dismissal only if the plaintiff has failed to plead "'enough facts to state a claim to relief that is plausible on its face.'" Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Here, Rossi filed an amended complaint on June 17, 2013 ("amended complaint") with leave from the District Court, and we take the facts from that complaint.

2

had co-founded "multiple businesses and investment ventures," App. 34, including Principia Partners, of which Rossi was a managing partner. Each of the three made a $70,000 initial investment in Principia, and thus each owned one third of the company and was entitled to one third of the net profit and the net profit on sale. Quarmley served as managing member of Principia and Morton served as secretary. In addition to his ownership interest, Rossi participated in Principia "through his running of the [group's] other businesses such as Principia Partners, which in turn provided further capital funding to Principia Ventures to pay off its loans and other obligations." App. 41. Under the Operating Agreement, Rossi and the other members determined meeting times, any two members could call a special meeting or call for a distribution of profits, and any member could demand a vote on a particular issue.

Principia provided the initial capital for Highwood USA, a plastic wood manufacturing company in which Quarmley and Morton both had management roles. In order to raise additional money, Principia borrowed more than $2,000,000 from Kinsley Investments LLC. Quarmley, Morton, and Rossi personally guaranteed the loans jointly and severally. The loans created a monthly debt-service obligation of $16,500, which Principia paid using funds from Principia Partners over 26 months from 2006 until November of 2008. According to the amended complaint, "Principia Ventures was able to make these monthly payments to Kinsley only from funds generated by the work of two of its principals: Rossi and Morton." App. 44. In November of 2008, Principia did not make its monthly payment to Kinsley, and Quarmley and Morton told Rossi that Kinsley might declare a default and demand the balance of the loan. Quarmley and

3

Morton issued a capital call requiring an immediate contribution of $328,500, ostensibly to pay back the Kinsley loans. Rossi was struggling financially at the time, as Quarmley and Morton knew. Quarmley said that in order to make a capital call, they needed to do a company valuation, which he did. Quarmley told Rossi that Principia had no value, but that for purposes of the capital call he had assigned it the value equal to the original contributions of $210,000. Quarmley also said that there would be additional capital calls in the future, and Rossi, believing he could not meet these financial demands, gave Quarmley and Morton his shares in Principia, and in exchange they assumed his guarantees of Principia's debt.

Rossi later brought the present suit against Quarmley, Morton, and Principia, and they moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). The District Court granted the motion because it found that Rossi's interest in Principia was not a security under the Securities Act of 1933. Finding that Rossi had failed to state a federal claim, the District Court then declined to exercise jurisdiction over the state law claims and dismissed them as well. Rossi timely appealed.

## II.

### A.

In order to bring suit under federal securities laws, an investor must show that the interest in question is a "security" under the Securities Act of 1933. Steinhardt Group, Inc. v. Citicorp, 126 F.3d 144, 150 (3d Cir. 1997). Section 2(1) of the Securities Act of 1933 defines "security" and includes several catch-all types of securities, including "investment contract[s]." See 15 U.S.C. § 77b(a)(1); Steinhardt, 126 F.3d at 150. An

4

investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." SEC v. W.J. Howey Co., 328 U.S. 293, 298–99 (1946). The three elements for showing an investment contract, as established in Howey, are: (1) "an investment of money," (2) "in a common enterprise," (3) "with profits to come solely from the efforts of others." Steinhardt, 126 F.3d at 151 (quotation marks omitted).

The parties do not dispute that the first two elements are met here, and so we consider whether Rossi's interest in Principia meets the third requirement, that his profits were to come solely from the efforts of others. The third Howey element "attempts to separate passive investments from active, participatory interests in businesses." Goodwin v. Elkins & Co., 730 F.2d 99, 114 (3d Cir. 1984) (Becker, J., concurring). In making this determination, courts have considered "whether the investor has meaningfully participated in the management of the partnership in which it has invested such that it has more than minimal control over the investment's performance." Steinhardt, 126 F.3d at 152. Nevertheless, we have "refused to read literally the term 'solely,'" id. at 153, and "an investment contract can exist where the investor is required to perform some duties, as long as they are nominal or limited and would have little direct effect upon receipt by the participant of the benefits promised by the promoters." Lino v. City Investing Co., 487 F.2d 689, 692 (3d Cir. 1973) (quotation marks omitted).

In analyzing the third element, we assess "the transaction as a whole, considering the arrangements the parties made for the operation of the investment vehicle in order to determine who exercised control in generating profits for the vehicle." Steinhardt, 126

5

F.3d at 153. While "the issue does not turn on whether the investor actually exercised its rights," it does turn on "what 'legal rights and powers were enjoyed by the investor.'" Id. at 155 (brackets and emphasis omitted) (quoting Goodwin, 730 F.2d at 107). Thus, we consider both the facts of the relationship and the text of the agreements governing the transaction. See Lino, 487 F.2d at 693 (noting that court must examine "the substance and economic reality of the situation rather than the formal characteristics of the parties" and considering the written agreement that governed the relationship at issue as well as the "facts and circumstances surrounding the agreement"). If the agreement governing the relationship "is not on its face an investment contract, and the plaintiff does not allege facts that call into question the substance of the agreement, the plaintiff is not a security holder, as a matter of law." Goodwin, 730 F.2d at 112 (Seitz, C.J., concurring). We thus look to whether the allegations show "a significant variance between the terms of the [Operating Agreement] and the allocation of management power in fact." Id. Our ultimate concern is "to determine the 'economic reality' of the enterprise." Id. (quoting Tcherepnin v. Knight, 389 U.S. 332, 336 (1967)).

B.

According to the facts alleged in the amended complaint, Rossi's ownership share and rights to profits were equal to his partners'. Under the Operating Agreement, attached to the amended complaint, Rossi had several rights that allowed him to participate in the management of Principia: he was able to call special meetings with the agreement of one other member, examine Principia's financial documents, and vote in proportion to his share. Moreover, acts of Principia require a vote by a majority of

6

members.  Quarmley and Morton point out that the Operating Agreement thus gave Rossi "[p]rotection against unilateral action by other members on behalf of the company," Quarmley Br. 24.  These managerial prerogatives gave Rossi "the kind of leverage and ability to protect [him]sel[f] that takes [him] outside the intended scope of the [SEA]." Goodwin, 730 F.2d at 103 (quotation marks omitted).

Rossi's allegations do not suggest a significant variance between his authority under the Operating Agreement and his authority in fact.  Rossi claims that his one vote "was meaningless against the combined votes of Quarmley and Morton who invariably voted identically."  Rossi Br. 30.  The gravamen of the amended complaint is that Rossi could not "meaningfully participate" in the management of Principia because he was at odds with the majority.  But the Operating Agreement contemplates exactly this majority-control arrangement, and Rossi's dissatisfaction with the majority's decisions does not convert his participation as a partner to an investment contract.  See Goodwin, 730 F.2d at 113 (Seitz, C.J., concurring) ("[A]n unhappy minority partner does not a security holder make.").

We suggested in Goodwin that we might accept the reasoning of the Court of Appeals for the Fifth Circuit in Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981), that an investor in a partnership might have an interest that constituted an investment contract, in spite of the powers given him by the governing agreement, if he could show he was "'so inexperienced and unknowledgeable in business affairs that that he is incapable of intelligently exercising his partnership or venture powers.'"  Goodwin, 730 F.2d at 106 (emphasis omitted) (quoting Williamson, 645 F.2d at 424)).  Rossi attempts this

7

argument, contending that he "lacked the financial and accounting knowledge and sophistication of Quarmley and Morton." Rossi Br. 36. But this claim is belied by the facts Rossi alleges, including that he had founded other companies with Morton and Quarmley in the past and that he successfully managed Principia Partners. We need not adopt the rule in <u>Williamson</u> at this juncture to reject the argument that a lack of sophistication on Rossi's part turned his interest into an investment contract.

With respect to the economic reality, Rossi personally guaranteed the loan that Principia used to fund its early operations. By Rossi's account, the money used to pay back the loan came solely from Principia Partners, which Rossi managed. Rossi's control of Principia Partners was thus essential to the success of Principia; enabling Principia to repay its loans was not a "nominal" contribution, nor did it have "little direct effect" on Principia's success. Rossi contends that by considering his contribution to the loan repayment to be meaningful participation in bringing about the success of the venture, we make "every investor" a meaningful participant "by the act of making an investment of money." Rossi Br. 34. Our decision is not so expansive: Rossi personally guaranteed a loan to a business of which he owned one third, and the revenue from another business he managed repaid that loan. His contribution was hardly limited to an investment of money, and his interest was not an investment contract but a commercial venture.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.