FILED
United States Court of Appeals
Tenth Circuit

December 13, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

AVENUE CAPITAL
MANAGEMENT II, L.P., a
Delaware limited partnership;
AVENUE INTERNATIONAL
MASTER, L.P., a Cayman Islands
exempted limited partnership;
AVENUE INVESTMENTS, L.P., a
Delaware limited partnership;
AVENUE SPECIAL SITUATIONS
FUND VI (MASTER), L.P., a
Delaware limited partnership;
MANAGED ACCOUNTS MASTER
FUND SERVICES-MAP10, a sub-
trust of an umbrella unit trust
constituted by a trust deed governed
by the laws of Ireland; AVENUE-
CDP GLOBAL OPPORTUNITIES
FUND, L.P., a Cayman Islands
exempted limited liability
partnership; AVENUE SPECIAL
OPPORTUNITIES CO-
INVESTMENT FUND I, L.P., a
Delaware limited partnership;
AVENUE SPECIAL
OPPORTUNITIES FUND I, L.P., a
Delaware limited partnership;
DRAWBRIDGE SPECIAL
OPPORTUNITIES FUND L.P., a
Delaware limited partnership;
DRAWBRIDGE SPECIAL
OPPORTUNITIES FUND LTD, a
Cayman Islands company; FCI
HOLDINGS I LTD, a Cayman
Islands company; FCI HOLDINGS
II LTD, a Cayman Islands company;
FCOF II UB SECURITIES LLC, a

Delaware limited liability company;
FCOF UB INVESTMENTS LLC, a
Delaware limited liability company;
FTS SIP L.P., a Jersey limited
partnership; PANGAEA CLO 2007-1
LTD, a Cayman Islands company;
SARGAS CLO I LTD, a Cayman
Islands company, WORDEN
MASTER FUND II L.P., a Cayman
Islands exempted limited
partnership; WORDEN MASTER
FUND L.P., a Cayman Islands
exempted limited partnership,

     Plaintiffs-Appellants,

v.

RICHARD F. SCHADEN, an
individual; RICHARD E.
SCHADEN, an individual;
FREDERICK H. SCHADEN, an
individual; GREG MACDONALD,
an individual; DENNIS SMYTHE,
an individual; ANDREW R. LEE, an
individual; PATRICK E. MEYERS,
an individual; JOHN M. MOORE, an
individual; THOMAS RYAN, an
individual; CONSUMER CAPITAL
PARTNERS LLC, a Delaware
limited liability company a/k/a
Cervantes Capital LLC,

    Defendants-Appellees.

No. 15-1389

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CV-02031-PAB-KLM)**

_____

2

Rex S. Heinke, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California (Jeffery A. Dailey, Akin Gump Strauss Hauer & Feld LLP, Philadelphia, Pennsylvania, Jessica M. Weisel, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California, Stephen M. Baldini, Akin Gump Strauss Hauer & Feld, LLP, New York, NY, and Allen L. Lanstra, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, California, with him on the briefs) for Plaintiffs-Appellants.

Nathaniel P. Garrett, Jones Day, San Francisco, California (Amanda K. Rice, Jones Day, San Francisco, California, Timothy R. Beyer, Bryan Cave, Denver, Colorado, Bruce S. Bennett and Christopher Lovrien, Jones Day, Los Angeles, California, with him on the brief) for Defendants-Appellees.

———————————————

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

———————————————

**BACHARACH**, Circuit Judge.

———————————————

This securities-fraud case arises out of a transaction to restructure Quiznos's debt.[1] In this transaction, multiple investment funds ("Avenue" and "Fortress")[2] purchased equity in Quiznos. After Quiznos's financial

---

[1]   Quiznos franchises sandwich restaurants and operates a catering business.

[2]   The parties collectively refer to the following plaintiffs as "Avenue": Avenue Capital Management II, L.P., Avenue International Master, L.P., Avenue Investments, L.P., Avenue Special Situations Fund VI (Master), L.P., Managed Accounts Master Fund Services–MAP10, Avenue-CDP Global Opportunities Fund, L.P., Avenue Special Opportunities Co-Investment Fund I, L.P., and Avenue Special Opportunities Fund I, L.P. Plaintiff Avenue Capital Management II, L.P. is an investment management firm that did not purchase a stake in Quiznos; the other "Avenue" plaintiffs are investment funds affiliated with Avenue Capital Management II, L.P.

The parties collectively refer to the following plaintiffs as "Fortress": Drawbridge Special Opportunities Fund L.P., Drawbridge

3

condition plummeted, Avenue and Fortress sued former Quiznos managers and officers, claiming that they had fraudulently misrepresented Quiznos's financial condition and invoking § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.[3]

**1.     The district court dismissed the causes of action for securities fraud based on failure to state a valid claim.**

The 1934 Act's definition of "security" includes an investment contract, stock, or instrument commonly known as a "security." 15 U.S.C. § 78c(a)(10). In district court, Avenue and Fortress argued that the transaction involved investment contracts, triggering the 1934 Act and Rule 10b-5. The district court rejected this argument, reasoning in part that the transaction had given Avenue and Fortress control over Quiznos. Ultimately, the district court dismissed the securities-fraud causes of action, concluding that Avenue and Fortress had failed to identify facts showing that their newly acquired interests in Quiznos constituted investment contracts.

---

Special Opportunities Fund LTD, FCI Holdings I LTD, FCI Holdings II LTD, FCOF II UB Securities LLC, FCOF UB Investments LLC, FTS SIP L.P., Pangaea CLO 2007-1 LTD, Sargas CLO I LTD, Worden Master Fund II L.P., and Worden Master Fund L.P. All of these plaintiffs are investment funds affiliated with Fortress Investment Group LLC, an investment management firm that is not a party.

[3]     Avenue and Fortress also sued under state law, but the state-law claims are not involved in this appeal.

## 2.      Issues and Conclusions

Avenue and Fortress challenge the district court's conclusion on three grounds, arguing that the transaction involved (1) investment contracts, (2) stock, and (3) instruments commonly known as securities. We reject each argument: The transaction did not involve investment contracts, and Avenue and Fortress failed to properly preserve their current arguments characterizing the interests as stock or instruments commonly known as securities.

## 3.      We engage in de novo review.

The district court ruled that the causes of action for securities fraud had failed to state a valid claim. In addressing this ruling, we engage in de novo review. *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

To survive the motion to dismiss, Avenue and Fortress had to plead enough facts to create a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, we accept the truth of the complaint's well-pleaded factual allegations. *Cty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1034 (10th Cir. 2002). These factual allegations include not only the statements in the complaint but also the documents referenced in the complaint that are central to the claims. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th

5

Cir. 1997). Thus, we rely on (1) the facts alleged in the complaint and (2) the central documents referenced in the complaint.

**4.    Quiznos restructured its debt after experiencing a sharp downturn.**

The complaint and referenced documents show that Quiznos had borrowed heavily before its business sharply declined. From 2007 to 2011, Quiznos lost roughly 3,000 franchise restaurants and profitability plunged.

With this plunge, Quiznos could no longer satisfy its loan covenants. As a result, Avenue, Fortress, and others could foreclose on collateral, call in debt, or accelerate payments. To avoid a calamity, Quiznos restructured its debt.

**5.    With the restructuring of the debt, Avenue and Fortress gained control over Quiznos.**

The restructuring took place through a transaction involving Quiznos, Avenue, Fortress, and others. This transaction made Avenue and Fortress members of a manager-managed limited-liability company that operated Quiznos. Avenue acquired about 70% of the LLC's shares, and Fortress acquired about 10% of the shares. In exchange, Avenue pumped $150 million into Quiznos and Avenue and Fortress reduced Quiznos's debt.

With roughly 80% of the LLC's shares, Avenue and Fortress collectively obtained the power to amend the LLC agreement however they wished. In addition, the LLC agreement empowered Avenue to appoint seven managers (one of whom would serve as the chairperson of the board)

6

and Fortress to appoint one manager. Avenue and Fortress could also remove the managers that they had appointed. The appointed managers would select the Chief Executive Officer, who would serve as the ninth manager. Avenue and Fortress also obtained the power to appoint five non-voting observers to attend board meetings.

Management of Quiznos would be vested exclusively with the board. Although Quiznos's day-to-day operations would be handled by the CEO and other officers, the board would appoint these officers and enjoy supervisory authority over the officers. If the board wished, it could even dissolve the LLC.

At the end of each fiscal year, Avenue, Fortress, and other members of the LLC would receive Quiznos's audited financial statements. At the end of each quarter, these members would also receive Quiznos's unaudited financial statements. In addition, the LLC agreement allowed Fortress to inspect, examine, and copy Quiznos's records.

**6. Avenue and Fortress collectively controlled the profitability of their investments in Quiznos, which means the interests cannot constitute investment contracts.**

We must determine, as a matter of law, whether the interests conveyed to Avenue and Fortress constitute investment contracts. *See SEC v. Thompson*, 732 F.3d 1151, 1160 (10th Cir. 2013) (matter of law). In making this determination, we consider whether the expected profits from these interests were "to come solely from the efforts of others." *SEC v.*

7

*W.J. Howey Co.*, 328 U.S. 293, 301 (1946); *see Landreth Timber Co. v. Landreth*, 471 U.S. 681, 691-92 (1985) (indicating that *Howey*'s control test determines whether an instrument constitutes an investment contract). In our view, Avenue and Fortress controlled the profitability of their investments, preventing characterization as investment contracts.

"An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982). The greater the control acquired by Avenue and Fortress, the weaker the justification to characterize their investments as investment contracts. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 732 (11th Cir. 2005) (per curiam).

In assessing the degree of control that Avenue and Fortress acquired, we consider their contribution of time and effort to the success of the enterprise, their contractual powers, their access to information, the adequacy of financing, the level of speculation, and the nature of the business risks. *SEC v. Shields*, 744 F.3d 633, 645 (10th Cir. 2014).

Applying these factors, Avenue and Fortress point out that (1) the LLC is manager-managed and (2) the daily operations are controlled by the officers rather than the members. But in three ways, the transaction allowed Avenue and Fortress to control the profitability of their investments.

8

First, Avenue and Fortress collectively obtained ownership of about 80% of the LLC. With this level of ownership, Avenue and Fortress could freely amend the LLC agreement. *See Wen v. Willis*, 117 F. Supp. 3d 673, 685-88 (E.D. Pa. 2015) (holding that an interest in an LLC was not an investment contract, partially because the LLC agreement could be amended only if the plaintiff-investor consented). For instance, Avenue and Fortress could amend the agreement to

- make the company member-managed, which would allow direct control over Quiznos, or

- allow dissolution of the company through a majority vote of the members.

*See Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 392-93 (D. Del. 2000) (holding that interests in an LLC did not constitute investment contracts, in part because the plaintiff-investor could dissolve the company); *Wen*, 117 F. Supp. 3d at 685-88 (same).

Second, Avenue and Fortress could (1) choose eight of the nine managers, including the chairperson of the board, and (2) remove the eight managers without cause. *See Great Lakes*, 96 F. Supp. 2d at 392-93 (concluding that interests in an LLC operated by managers did not constitute investment contracts, primarily because the plaintiff-investor could appoint all managers and remove them without cause). With the power to choose and remove managers, Avenue and Fortress could

9

supervise the individuals handling day-to-day operations and could dissolve the LLC.[4]

Third, Avenue and Fortress are sophisticated and informed investors, allowing them to make informed investment decisions and intelligently exercise control over Quiznos. As professional investors, Avenue and Fortress had earlier invested heavily in Quiznos. *See Robinson v. Glynn*, 349 F.3d 166, 172 (4th Cir. 2003) (stating that an investor in an LLC "was a savvy and experienced businessman" in concluding that an interest in an LLC was not an investment contract). Under the LLC agreement, Avenue and Fortress could

- receive audited and unaudited financial statements from Quiznos and

- designate non-voting members to attend board meetings.

In addition, the LLC agreement expressly stated that Fortress could inspect, examine, and copy Quiznos's books. *See Rossi v. Quarmley*, 604 F. App'x 171, 174 (3d Cir. 2015) (concluding that an interest in an LLC was

---

[4] According to Avenue and Fortress, they did not "exercise[] direct control over their investment" because "they could only elect members of the Board of Managers." Appellants' Opening Br. at 33. Avenue and Fortress add that "if the ability to appoint a majority of managers precluded an agreement from being an investment contract, any party that acquires a majority interest in a company would be unprotected from fraud by the securities laws." *Id.* at 34. We need not decide whether the power to appoint a majority of managers precludes characterization as investment contracts. Avenue and Fortress could not only appoint managers, but also amend the LLC agreement. Together, these powers allowed Avenue and Fortress to exercise control over the profitability of their investment. As a result, their interests did not constitute investment contracts.

10

not an investment contract, partially because the plaintiff-investor had the right to examine the LLC's financial documents); *Nelson v. Stahl*, 173 F. Supp. 2d 153, 164-66 (S.D.N.Y. 2001) (holding that interests in an LLC were not investment contracts, in part because the plaintiff-investors had obtained the right "to audit, examine and make copies of or extracts from the books of account of the Company, Certificate of Formation, minutes of any meeting, tax returns, and other information regarding the affairs of the Company").

In these three ways, the transaction gave Avenue and Fortress control over Quiznos's profitability, preventing characterization of the investments as investment contracts.

Avenue and Fortress argue that they did not intend to exercise control because they continued to expect the board and the officers to operate Quiznos. But "the test of control is an objective one." *Bailey v. J.W.K. Props., Inc.*, 904 F.2d 918, 921-22 (4th Cir. 1990); *see Warfield v. Alaniz*, 569 F.3d 1015, 1021-22 (9th Cir. 2009) (framing the control test as an objective inquiry and stating that "while the subjective intent of the purchasers may have some bearing on the issue of whether they entered into investment contracts, we must focus our inquiry on what the purchasers were offered or promised"). Thus, we analyze the measure of control that Avenue and Fortress could exercise over Quiznos, not the control that they intended to exercise. *See Goodwin v. Elkins & Co.*, 730

11

F.2d 99, 104 (3d Cir. 1984) ("Whatever subjective perceptions [the plaintiff-investor] may have entertained about his position in the firm, and whatever may have been the role he actually assumed, the legal interest which he enjoyed does not fall within the scope of the term 'security' as intended by Congress."). "So long as [Avenue and Fortress] retain[ed] ultimate control, [they had] the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager[s]. It [was] not enough, therefore, that [Avenue and Fortress] in fact rel[ied] on others for the management of their investment . . . ." *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir. 1981); *see also SEC v. Shields*, 744 F.3d 633, 645 (10th Cir. 2014) ("[W]e view the *Williamson* approach as a supplement to controlling Supreme Court and circuit precedent in determining if allegations are sufficient to raise a fact question regarding whether a particular investment is a security.").

The interests could constitute investment contracts only if Quiznos's managers and officers were irreplaceable or otherwise insulated from Avenue and Fortress's ultimate control. *See Williamson*, 645 F.2d at 424 ("[A] partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control."). There is no suggestion that Quiznos's managers or officers were irreplaceable or otherwise beyond Avenue and Fortress's ultimate control.

12

\* \* \*

Avenue and Fortress are sophisticated and informed investors that could make informed investment decisions and intelligently exercise their control over Quiznos's operations; thus, Avenue and Fortress controlled the profitability of their investments. What Avenue and Fortress purchased was not an investment contract.[5]

**7.     Fortress forfeited its argument that Avenue could unilaterally dominate the board.**

Fortress argues that it was mistakenly lumped together with Avenue. According to Fortress, it had considerably less sway over the board than Avenue had.

Fortress forfeited this argument by failing to raise it in district court. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016). We may consider forfeited arguments under the plain-error standard. *Id*. at 1239. But Fortress has not asked us to apply the plain-error standard. As a result, we decline to address this newly presented argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) (stating that a failure to argue plain error on appeal "marks the end of the road" for an argument newly presented on appeal); *see also* Part 8, below (discussing forfeiture).

---

[5]     The defendants argue that the transaction was a private agreement, the result of good faith bargaining. Because we affirm on other grounds, we need not address this argument.

**8. Avenue and Fortress forfeited their appellate arguments characterizing the interests as stock or instruments commonly known as securities.**

Securities include not only investment contracts but also stock and instruments commonly known as securities. 15 U.S.C. § 78c(a)(10). In district court, the defendants contended that the interests conveyed to Avenue and Fortress did not constitute stock under the 1934 Act. Avenue and Fortress did not respond to this argument, arguing instead that their investments constituted investment contracts. But here, Avenue and Fortress argue that the interests constituted stock or instruments commonly known as securities. These arguments were forfeited.

An appellant forfeits an argument by failing to preserve it in district court. *Anderson*, 827 F.3d at 1238. In district court, Avenue and Fortress never argued that the interests constituted stock or instruments commonly known as securities. As a result, the district court expressly declined to address these possibilities. *Ave. Capital Mgmt. II, L.P. v. Schaden*, 131 F. Supp. 3d 1118, 1125 (D. Colo. 2015).

Avenue and Fortress do not deny that they failed to preserve their argument identifying the interests as instruments commonly known as securities. But Avenue and Fortress insist that they did not forfeit their characterization of the instrument as "stock," arguing that

- they are simply presenting a further argument in support of their prior characterization of the transactional documents as a security and

14

- characterization as stock involves a matter of law.

We reject these arguments.

Avenue and Fortress did argue in district court that the transaction involved securities. But what matters are the theories presented in district court, not "the overarching claims or legal rubrics that provide the foundation for them." *Fish v. Kobach*, No. 16-3147, ___ F.3d ___, 2016 WL 6093990, at *13 (10th Cir. Oct. 19, 2016) (to be published).

As Avenue and Fortress observe, their current arguments are consistent with the one presented in district court, for something can simultaneously constitute an investment contract and stock. But this observation proves little, for many things are consistent even though they are different. Though the arguments were consistent, Avenue and Fortress never contended to the district court that the transaction involved stock.

Both an investment contract and a share of stock fall under the general category of a "security," but the two involve different legal analyses. *Compare Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 (1985) (stating that an instrument constitutes stock when it "is both called 'stock' and bears stock's usual characteristics")*, with id.* at 691-92 (indicating that the control test from *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), determines whether an instrument creates an investment contract). Avenue and Fortress's arguments in district court showed the need to

15

analyze whether they had obtained an investment contract. But there was no apparent reason to consider whether the transaction included the conveyance of stock. Thus, inclusion within the broad category of a "security" was not enough to preserve a claim involving the conveyance of stock. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) (stating that an issue has not been preserved when it falls under the same general category as an argument presented at trial); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993) (same). Simply raising a related appeal point was not enough to avoid forfeiture. *See Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1233 (10th Cir. 1997) (stating that we have consistently rejected the argument that the raising of a related theory in district court was enough to preserve a new argument).

When an argument is forfeited, we have discretion to consider the argument. We sometimes do so when an issue involves a matter of law. *Cox v. Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2016). But even for matters of law, we decline to consider newly presented legal arguments unless the proper legal disposition is beyond reasonable doubt. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1227-28 (10th Cir. 2008). The legal disposition is subject to reasonable doubt, for example, when the issue involves a matter of first impression in our circuit. *See id.* (indicating

16

that proper resolution of a forfeited issue is unsettled when the issue involves a matter of first impression in our circuit).

Characterization of the interests as stock could involve multiple issues of first impression. For example, we have never decided whether the 1934 Act's coverage for a stock transaction is triggered by calling an instrument "stock" when the transaction involves some, but not all, of the attributes of stock. Nor have we decided whether membership in an LLC can constitute stock.

The same is true for characterization as instruments commonly known as securities, for we have not yet addressed this classification for interests in an LLC.

Even though Avenue and Fortress failed to preserve these appellate challenges, we could ordinarily consider these challenges under the plain-error standard. *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238-39 (10th Cir. 2016). But we have not been asked to review these arguments for plain error. As a result, we decline to consider the newly presented arguments characterizing the interests as stock or as instruments commonly known as securities. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) (stating that a failure to argue plain error on appeal "marks the end of the road" for an argument newly presented on appeal).

**9.    Conclusion**

Avenue and Fortress (1) failed to adequately allege facts showing that their collective interests constituted investment contracts and (2) forfeited the remaining appeal points. Thus, we affirm.