**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

A.P., IV, ("LT"), a child by his father
Anthony Porco, III,

      Plaintiff - Appellant,

v.

LEWIS PALMER SCHOOL
DISTRICT NO. 38, ANTHONY
KARR; JAMES PORTER,
STEPHANIE KUGLER, GARY
GABEL, KAREN BROFFT, ROBERT
FOSTER, TAMARA HARDIN,
JENNIFER DAY, and SEAN
O'CONNOR,

      Defendants - Appellees.

No. 17-1114
(D.C. No. 16-CV-01584-RBJ)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **MORITZ**, Circuit
Judges.

---

Appellant LT brought suit against Lewis Palmer School District under the

Americans with Disabilities Act (ADA), the Rehabilitation Act (Section 504), and

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the Individuals with Disabilities Education Act (IDEA), as well as under state law. He alleges the School District failed to halt disability-related bullying that left him with depression, post-traumatic stress disorder, and educational injuries. He also alleges the School District wrongfully expelled him, blaming him for altercations stemming from the bullying. The district court dismissed LT's federal claims on the grounds that he did not exhaust his administrative remedies as required by the IDEA.

We affirm. LT did not exhaust the IDEA's required procedures and forfeited the other arguments he advances on appeal.

## I. Background

As alleged in his complaint, LT suffers from ADHD and impulse control disorder. In grade school, LT's school placed him on an individualized education program (IEP) and on a Rehabilitation Act plan to better accommodate his disabilities. In seventh grade, he was taken off the IEP.

Beginning in eighth grade, LT's classmates persistently bullied him because of his disabilities. They would taunt him, attempting to provoke a reaction. The provocateurs apparently succeeded, and LT claims the school unfairly disciplined him for his misbehavior without taking into account its disability-related origin.

LT's parents repeatedly complained about the bullying to the School District, but the District did nothing to stop it. The bullying continued for several

years, causing LT to suffer from depression and post-traumatic stress disorder. LT's behavioral outbursts continued as well. In response, the school placed LT on several behavioral contracts, none of which succeeded. Eventually, his behavior escalated to threats—including a threat to "shoot up the school." App. 13.

In April 2015, in light of the ongoing misbehavior, the School District considered expelling LT and proceeded to an expulsion hearing. In doing so, however, the District failed to determine whether the misbehavior at issue was a "manifestation" of LT's disabilities, as regulations implementing the Rehabilitation Act require. *See* 34 C.F.R. §§ 104.35–104.36. After LT's parents objected, the District reconsidered and conducted a manifestation hearing. LT claims that hearing was still defective. The District then held another expulsion hearing—allegedly without properly notifying LT—and expelled LT.

LT's parents responded by filing a complaint with the Office of Civil Rights at the Department of Justice. Following an OCR investigation, the School District entered into a Voluntary Resolution Agreement with the OCR. The District consented to monitoring by the OCR, agreed to conduct an investigation into LT's misbehavior, and agreed to conduct a new expulsion hearing. At the new expulsion hearing on November 5, 2015, the School District again decided to expel LT.

In June 2016, LT sued the School District under the IDEA, the ADA, and the Rehabilitation Act, seeking damages, a reversal of his expulsion, and attorneys' fees. LT claimed the District's failure to protect him from disability-motivated bullying caused him intense emotional injuries as well as educational injuries. He further claimed the District wrongfully expelled him because of his disability and violated several procedural requirements under the relevant statutes. Finding LT had not exhausted his administrative remedies under the IDEA, the district court granted the School District's motion to dismiss LT's federal claims for lack of subject matter jurisdiction. The court also dismissed LT's state law claims for lack of pendent jurisdiction.

## II. Analysis

The IDEA guarantees children with disabilities a "free appropriate public education," or FAPE, mainly through implementation of "individualized education programs," or IEPs. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49 (2017). At the same time, Title II of the ADA forbids public entities from discriminating against persons with disabilities. *See* 42 U.S.C. §§ 12131–12132. And rounding out the trio, the Rehabilitation Act requires public schools (among other entities) to reasonably accommodate students with disabilities. *See* 29 U.S.C. § 794; *Alexander v. Choate*, 469 U.S. 287, 299–301 (1985).

But before students can bring suit under these statutes, they must satisfy the IDEA's exhaustion requirement. The IDEA requires persons with IDEA claims to

-4-

proceed through a series of administrative steps before they may file a suit in court. *See Fry*, 137 S. Ct. at 749 (detailing the steps). The same exhaustion requirement applies to claims under the ADA or the Rehabilitation Act if those claims are "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(l). In other words, persons with ADA or Rehabilitation Act claims that seek similar kinds of relief as a claim under the IDEA cannot file a suit in court unless they have already undergone the administrative procedures the IDEA requires. *See Fry*, 137 S. Ct. at 749; *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1065–67 (10th Cir. 2002).

LT brought claims under all three of these statutes without first following the particular exhaustion steps listed in the IDEA. For that reason, the district court dismissed those claims.

On appeal, LT makes several arguments as to why the IDEA's exhaustion requirement does not apply to his ADA and Rehabilitation Act claims, but he has forfeited these arguments because he did not raise them below. In the proceedings below, LT never argued (as he does now) that the IDEA's exhaustion requirement did not apply to his claims because seeking an administrative remedy would have been futile. Similarly, he did not allege the School District caused his failure to exhaust by failing to notify him about his available remedies. And LT never claimed he was alleging systemic violations of law within the District. In fact, as the district court noted, LT did "not contest" that his claims were

subject to IDEA exhaustion at all.  App. 73.  He instead argued only that he had met his burden by other means (acknowledging he had not followed the specific steps outlined in the IDEA) and that the District had waived the exhaustion requirement.  Indeed, LT might have even conceded the IDEA's exhaustion requirement applies to his ADA and Rehabilitation Act claims in his response to the School District's motion to dismiss.  *See* App. 51.

Because LT did not raise these issues below and does not argue plain error now, we do not consider them on appeal.  *See Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016).

In spite of this forfeiture, however, LT argues the Supreme Court's recent decision in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), supports his argument that the IDEA's exhaustion requirement does not apply to his ADA and Rehabilitation Act claims.  LT asks us to consider the applicability of *Fry* to this case because the Supreme Court decided *Fry* on February 22, 2017—about a week before the district court issued its decision on March 2, 2017, and months after the parties briefed the motion to dismiss.

We decline to consider the argument.  Regardless of *Fry*'s effect on the question at issue, LT did not contest that the IDEA exhaustion requirement applied to his claims even though he could have under then-existing law.  *See Cudjoe*, 297 F.3d at 1066–67; *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785–86 (10th Cir. 2013).  And if LT thought he had a better case under *Fry*, he

could have moved for reconsideration on the basis of *Fry* below. He did not do so. Although we normally would consider the applicability of a new Supreme Court case to an issue on appeal, we do not do so for arguments that were not preserved below.[1]

As for the arguments LT did raise below, they are similarly unavailing. First, LT contends his filing of a complaint with the Office of Civil Rights of the Department of Justice, as well as several other hearings at the school, somehow met the very different prerequisites of the IDEA. We, like the district court, find no merit in this assertion. And LT's argument that the School District waived its exhaustion defense by signing the Voluntary Resolution Agreement with the Department of Justice fares no better. Nothing in the agreement purports to waive any exhaustion requirement, and nothing indicates the School District acknowledged systemic violations of law.[2]

---

[1] In any event, LT's proposed amended complaint specifically alleges "denial of a Free Appropriate Public Education" by the School District in Count I and Count II. App. 19. It further alleges the District's actions "denied LT the benefits of [the School District's] educational services solely because of LT's disability." *Id.* These allegations are a far cry from the generalized disability related allegations in *Fry*, which involved the wrongful denial of a service dog for a child with cerebral palsy. *See* 137 S. Ct. at 750–51.

[2] Given our resolution of this issue, we find it unnecessary to address the School District's argument that IDEA exhaustion is jurisdictional and cannot be waived.

Accordingly, we AFFIRM the district court.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge