**UNITED STATES COURT OF APPEALS**     June 5, 2018

**TENTH CIRCUIT**

DERMA PEN, LLC,

      Plaintiff - Appellee,

v.

4EVERYOUNG LIMITED, doing
business as DermapenWorld;
BIOSOFT (AUST) PTY LTD, doing
business as DermapenWorld;
EQUIPMED INTERNATIONAL PTY
LTD, doing business as
DermapenWorld,

      Defendants,

and

STENE MARSHALL, doing business
as DermapenWorld,

      Defendant - Appellant,

and

4EVERYOUNG LIMITED;
EQUIPMED INTERNATIONAL PTY
LTD.,

      Counterclaim Plaintiffs,

v.

DERMA PEN, LLC; MICHAEL E
ANDERER; JEREMY JONES;
MICHAEL J. MORGAN; CHAD
MILTON; MEDMETICS, LLC, a

No. 17-4096
(D.C. No. 2:13-CV-00729-DN-EJF)
(D. Utah)

Delaware limited liability company;
DERMAGEN INTERNATIONAL
LLC; DERMA PEN IP HOLDINGS,
JOHN DOES 1-25,

  Counterclaim Defendants-
  Appellees.

---

## ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **HARTZ**, Circuit Judges.

---

This case began as a dispute over trademark infringement and counterclaims for breach of contract. The district court detailed much of the procedural history below.[1]

This appeal concerns only one small part of the lengthy history of this case: the default judgment the district court entered against Stene Marshall, a defendant in the action below. Marshall argues the district court improperly imposed a default judgment against him as a sanction for repeatedly failing to obtain counsel by the court's deadlines. He further challenges the scope of the injunction

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] *See generally Derma Pen, LLC v. 4EverYoung Ltd.*, 2017 WL 2258362 (D. Utah May 22, 2017); *Derma Pen, LLC v. 4EverYoung Ltd.*, 2015 WL 803148 (D. Utah Feb. 26, 2015), *vacated*, 2016 WL 4532106 (D. Utah Aug. 29, 2016).

triggered by the default judgment, claiming it impermissibly reaches international activity and the conduct of non-parties.

We hold that (1) the district court did not abuse its discretion when it entered default judgment against Marshall, (2) Marshall forfeited his challenge to the injunction's international scope, and (3) Marshall lacks standing to challenge the injunction's applicability to non-parties.

# I. Background

In 2013, Derma Pen LLC sued 4EverYoung Limited and Stene Marshall (a principal in 4EverYoung) for trademark infringement. 4EverYoung counterclaimed for breach of contract and sought specific performance.

### A. *The events leading to the default judgment*

By 2015, two years into the litigation in the District of Utah, 4EverYoung had successfully obtained injunctions against Derma Pen and others pursuant to its breach-of-contract counterclaims. The success would prove short-lived.

In May 2015, 4EverYoung changed law firms, and the Kirton law firm replaced the Magleby law firm as counsel for 4EverYoung, Marshall, and the other defendants (collectively, the 4EverYoung defendants). It is clear the Magleby firm's withdrawal at least partly related to payment of its legal fees: about a year later, the Magleby firm filed a complaint against 4EverYoung seeking to recover upwards of $772,000 in unpaid legal fees.

-3-

In late 2015, the Kirton firm also moved to withdraw from representing the 4EverYoung defendants because of unpaid fees. On December 29, 2015, the court granted the motion.

4EverYoung then retained the firm of Manning Curtis Bradshaw & Bednar, PLLC along with Morgan, Lewis & Bockius LLP. Their fate followed that of their predecessors. Several months after appearing, they moved to withdraw, citing unpaid fees. The court granted those motions on May 31, 2016.

Beginning to see a pattern, the district court ordered: "Within 21 days after entry of this order [Defendants] shall file a notice of appearance of new counsel." R., Vol II at 351. The court warned: "Failure to timely file a notice of appearance of new counsel may subject [Defendants] to sanctions pursuant to Federal Rule of Civil Procedure 16(f)(1), including but not limited to dismissal or default judgment." *Id.* at 351–52.

The order's 21-day deadline landed on June 21. None of the 4EverYoung defendants, including Marshall, retained counsel before then. Nor did Marshall enter a pro se appearance.

After the deadline had passed, a new law firm, Baker & McKenzie LLP, contacted the court. It said the 4EverYoung defendants were in the process of retaining its services. The court issued a new order granting the defendants more time to comply. "If no appearance of counsel is made by Monday, June 27,

2016," the court again warned, "an order to show cause regarding dismissal will issue accordingly." R., Vol II at 1549.

On June 27, attorneys from a different firm, Ballard Spahr, LLP, appeared on behalf of 4EverYoung and some other corporate defendants. Yet no one appeared on Marshall's behalf, and Marshall again did not indicate he wished to proceed pro se.

In about three weeks' time, history repeated itself a fourth time. The Ballard firm moved to withdraw after 4EverYoung neglected to pay its retainer amount. The court—once again—granted the motion.

That same day, July 14, the court ordered that "on or before August 1, 2016, [Defendants] must show cause . . . why default judgment should not be entered against them." Marshall made no response by August 1. In fact, not a single defendant responded. In an ex parte letter dated August 2nd, Marshall asked the court for a one-week extension because of difficulties in hiring counsel caused by "the summer vacation period." R., Vol II at 1558; R., Vol III at 1130. He also expressed his intent to make a pro se appearance until he could retain counsel.

A week passed. No attorney made an appearance, and Marshall himself never appeared before the court. On August 10, Marshall emailed the court, stating new counsel would appear "in the next 48 hours." R., Vol II at 1559. Forty-eight hours later, no counsel had appeared.

On August 29, the court struck 4EverYoung's counterclaims and vacated the injunctions 4EverYoung had obtained. The court did so based on the 4EverYoung defendants' failure to appear or appoint counsel in accordance with the court's orders.

Over a month passed with little to no activity. On October 11, the court directed the parties to file all motions necessary to close the case. On October 31, the case showed signs of life: the law firm of Workman Nydegger appeared on behalf of the 4EverYoung defendants.

But the prompt payment that had eluded the Magleby firm—and the Kirton, Manning, Morgan, and Ballard firms—also eluded the Workman firm. On January 12, the Workman firm petitioned to withdraw because its retainer fees remained unpaid and because defendants had stopped responding to its communications. The court granted the motion on January 20.

The court then extended defendants—including Marshall—one more chance. Defendants were to appear with new counsel by noon on January 30. The court stressed that unpaid legal fees would no longer be adequate grounds for withdrawal. Moreover, the new attorneys had to agree to stay with the case until its completion—including appeal. They would also have to acknowledge they knew about the defendants' prior payment issues.

**B. *The default judgment and subsequent proceedings***

-6-

January 30 arrived, and no attorney appeared. Neither did Marshall file a notice of pro se appearance. *See* DUCiv R 83-1.4(c)(3). Twelve minutes before the deadline, at 11:48am, Marshall emailed the court ex parte and requested a one-week extension to appear with new counsel.

On January 31, the court entered default judgment against Marshall and the rest of the 4EverYoung defendants—setting an evidentiary hearing for March 1.

On February 27 and 28, Marshall emailed the court twice. In one email, he asked for another extension of time to appear with counsel. In the other, he asked to reschedule the March 1 hearing. The court declined to consider the emails because they were not in the proper form of a motion. The court later concluded there was no good cause to grant Marshall another extension. At the evidentiary hearing, the court found Derma Pen's evidence credible and asked Derma Pen to propose written findings of fact and conclusions of law.

Close to a month after this hearing, Marshall filed an appearance pro se. He then filed a series of motions to strike Derma Pen's proposed findings of fact and conclusions of law—which included a proposed trademark infringement injunction against the 4EverYoung defendants. On May 8, the court entered final judgment for Derma Pen, adopted its proposed orders, and denied Marshall's motions because they were procedurally flawed and untimely.

On June 7, Marshall filed this appeal pro se.

## II. Analysis

Marshall claims the district court erred when it entered default judgment against him. He also argues the resulting injunction is impermissibly broad in scope. We begin with Marshall's challenge to the default judgment.

### A. *The default judgment*

Rules 16(f) and 37(b)(2)(C) of the Federal Rules of Civil Procedure permit a court to enter a default judgment when a party disobeys a court order. We review a district court's entry of default judgment as a sanction for abuse of discretion. *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987).

Since a default judgment, like dismissal, "represents an extreme sanction," it is "appropriate only in cases of willful misconduct." *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992); *In re Rains*, 946 F.2d 731, 733 (10th Cir. 1991). A "willful failure" is "any intentional failure as distinguished from involuntary noncompliance." *M.E.N. Co*, 834 F.2d at 872–73. But "[n]o wrongful intent need be shown." *Id.*

In addition, before imposing a default judgment as a sanction, "a court should ordinarily consider a number of factors," including: (1) "the degree of actual prejudice to the defendant;" (2) "the amount of interference with the judicial process;" (3) "the culpability of the litigant;" (4) "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance;" and (5) "the efficacy of lesser sanctions." *See*

-8-

*Ehrenhaus*, 965 F.2d at 921. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal [or default judgment] an appropriate sanction." *Id.* (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.7 (10th Cir. 1988)). While the district court "should ordinarily evaluate these factors on the record," these "factors do not constitute a rigid test." *Id.*

Marshall contends the district court abused its discretion because (1) Marshall's conduct was not the kind of willful misconduct that is sanctionable with default judgment, and (2) the district court did not make the explicit findings it was required to make under our case law.

### 1. Willfulness

Marshall first argues the inability to hire counsel cannot be the kind of willful misconduct which a district court can punish with a default judgment. But our decisions show a party's repeated failure to hire counsel can be enough to warrant default judgment. *See Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993). We have decided that "wrongful intent" is unnecessary. *M.E.N. Co.*, 834 F.2d at 872–73. And we have also decided a party's "inability to secure a lawyer" can sometimes be that party's own fault. *Jones*, 996 F.2d at 265.

Still, Marshall contends he is not to blame for his inability to hire counsel. It is not his fault, Marshall says, that he could not afford to pay legal fees. Yet even assuming Marshall's payment issues were totally innocent, this does not

absolve his conduct for a simple reason: he could have appeared pro se, and chose not to.

Marshall further claims his failure to obtain an attorney between January 20 and January 30 was actually the court's fault. The court's order required any new attorney to continue representation through appeal—even if unpaid. This made it impossible to obtain counsel, Marshall says. And the ten-day period, too, was prohibitive, because Marshall was in Australia at the time.

This argument does not persuade us, for three reasons. First, even if we agreed the court's order made it unduly difficult to obtain a lawyer, Marshall could have appeared pro se.

Second, the conditions the district court required for new counsel to appear were reasonable. It was a tall order, no doubt. It is not surprising a lawyer would decline to take on Marshall's case with full knowledge of the slew of unpaid prior attorneys, not to mention an order requiring him or her to brave non-payment through the remainder of the case—even through appeal. But Marshall's repeated failures to obtain counsel had by that time obstructed the litigation for over half a year. Given this, it was reasonable for the district court to impose conditions which would obviate future delay.

Third, even if the court's order made it difficult for Marshall to obtain new counsel between January 20 and 30, the default judgment was based on far more than that single failure. Marshall suggests we must look at his failure to obtain

counsel in January in isolation. But we cannot shut our eyes to the string of failures that preceded it. Together, Marshall's repeated no-shows amount to willful misconduct.

For these reasons, Marshall's conduct was sufficiently willful to warrant the sanction of default judgment.

### 2. *The court's findings*

Marshall next argues the district court failed to make an explicit finding that Marshall willfully disobeyed the court's orders and did not consider the *Erenhaus* factors. Without those explicit findings, Marshall claims we must reverse.

But the court *did* make the appropriate findings. In its August order striking most of 4EverYoung's counterclaims, the district court found that each one of the *Erenhaus* factors justified dismissal. In so doing, it expressly considered whether 4EverYoung was "culpable"—finding that because it had not "paid its bills," 4Everyoung was "culpable for creating this delay, and is consequently subject to sanctions." R., Vol. II at 1548.

Soon thereafter, the court ordered that "[f]or the same reasons articulated in [the prior order dismissing certain counterclaims], all remaining claims against all parties by the Defendants 4EverYoung Limited, . . . and *Stene Marshall* d/b/a DermapenWorld, . . . are dismissed." Docket Order 950, 10/24/2016 (emphasis

added).[2] The court thereby applied its *Erenhaus* rationale to all of the 4EverYoung defendants, including Marshall.

Marshall disputes that these orders met the district court's obligation to consider the *Erenhaus* factors with respect to the default judgment. We do not find Marshall's argument persuasive. It is true the district court made its *Erenhaus* analysis in an order striking 4EverYoung's counterclaims on August 29, 2016, and did not repeat its analysis in its default judgment order against the 4EverYoung defendants on January 30, 2017. But the court did not need to duplicate an analysis that obviously continued to apply to the parties and the case. Nothing had changed in the few months since it had last evaluated the *Erenhaus* factors that could have caused it to reconsider the appropriateness of sanctions. Indeed, the situation had worsened. Marshall failed to either appear pro se or hire counsel *yet again*. As *Erenhaus* itself explains, its "factors do not constitute a rigid test," and we decline to rigidly require the court to repeat itself here. *See Ehrenhaus*, 965 F.2d at 921; *cf. United States v. Simons*, 592 F. App'x 717, 720 (10th Cir. 2014) (upholding sentence for violation of supervised release conditions when district court effectively incorporated its analysis for a different sentence).

---

[2] While not included in the record on appeal, we take judicial notice of this order. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1289 n.11 (10th Cir. 2017).

Since the court properly considered the *Erenhaus* inquiry, we turn to whether it abused its discretion in its conclusions. It did not. As already explained, Marshall's conduct was sufficiently willful. Marshall's persistent disobedience of the court's orders also prejudiced the other litigants and undermined the judicial process. As the district court noted, "[f]ailure to have representation stymies the judicial process" because "unrepresented parties do not respond to court orders" or "the opposing party's motions." R., Vol II at 1547. Furthermore, the court expressly warned Marshall—multiple times—that it could enter default judgment against him if he continued disobeying the court's orders. And after more than half a year of these repeated failings—even after it struck all the defendants' counterclaims—the district court reasonably concluded lesser sanctions would not resolve the issue.

Given these considerations and Marshall's second (and third and fourth and fifth) chances, we cannot find an abuse of discretion like that in the cases Marshall cites for support. *See, e.g.*, *Pescarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) (finding abuse of discretion when "on less than one week's notice . . . [the party] was required to find new counsel in a complicated securities class action without the benefit of even being able to turn the files in the case over to the new counsel").[3]

---

[3] Marshall also argues the district court should have considered the fact he had a meritorious defense. For various reasons, this argument fails: Marshall

(continued...)

* * *

We thus affirm the district court's decision to sanction Marshall with a default judgment.

### B.  *The injunction's scope*

Marshall argues the district court's injunction against trademark infringement is impermissibly broad in two ways: (1) the injunction's unqualified language seems to reach international activity in a way unauthorized by the Lanham Act, and (2) the injunction reaches non-parties.

First, Marshall forfeited his argument the injunction inappropriately covers international conduct because he did not make it below.  After the court entered default judgment against Marshall, it asked Derma Pen to draft a proposed order. At this point, Marshall made an appearance pro se and filed motions to strike the proposed orders, which included the injunction.  Nowhere in his motions did Marshall quarrel with the injunction's international scope.  We thus decline to consider this argument on appeal.  *See Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016).[4]

---

[3](...continued)
concedes "these determinations are not always necessary," Aplt Br. at 16; courts only consider this factor when ruling on Rule 55(c) or Rule 60(b) motions, *see Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); and his breach of contract claim was not a defense to the trademark infringement claim, *see Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1121 (10th Cir. 2014).

[4]  Though Marshall describes this issue as one of subject matter jurisdiction
(continued...)

-14-

Second, Marshall contends the injunction inappropriately enjoins non-parties in possession of materials bearing the Derma Pen trademark. The district court's injunction follows Rule 65(d)'s prescription for the ordinary coverage of an injunction almost word for word, except it includes anyone "aiding, assisting, or enabling Defendants." For reasons unclear, Marshall contends this last phrase sweeps significantly more broadly than Rule 65(d)—which applies injunctions to "persons who are in active concert or participation" with the parties or the parties' "officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d)(2).

Regardless of the merits of his claim, however, Marshall does not have standing to make this argument. Marshall has not provided a detailed explanation as to why he is personally harmed by this coverage. He claims only that this coverage "could cause the defendants harm" and "could harm Defendants by preventing other parties from wanting to do business with them." Aplt. Br. at

---

[4](...continued) under the Lanham Act, the proper extraterritorial reach of a Lanham Act injunction is a matter of statutory interpretation, not jurisdiction. The issue can therefore be forfeited. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (holding the proper extraterritorial reach of the Securities Exchange Act is not jurisdictional because "to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question"); *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 851 (7th Cir. 2012) (applying *Morrison* and overturning previous decision the Foreign Trade Antitrust Improvements Act's territoriality was jurisdictional—holding it instead goes to the merits of the claim); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

27–28. Marshall has failed to demonstrate he has a sufficiently concrete stake in this issue, and so we hold he does not have standing to argue it. *See Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) ("Each plaintiff must have standing to seek each form of relief in each claim."); *United States v. Elsass*, 769 F.3d 390, 398 (6th Cir. 2014) ("[I]t is doubtful that defendants have standing to bring a claim that the injunction is so overly broad and non-specific that it violates the due process rights of certain non-parties, . . . as that is not their claim to bring." (internal quotation marks omitted)).

## III.  Conclusion

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge