**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAVID HABECKER,

     Plaintiff-Appellant,

v.

TOWN OF ESTES PARK,
COLORADO; BOARD OF TRUSTEES
OF THE TOWN OF ESTES PARK,
COLORADO; JOHN BAUDEK, Mayor
of the Town of Estes Park, Colorado;
VICKIE O'CONNOR, Town Clerk of
the Town of Estes Park, Colorado;
GREG WHITE, Town Attorney for the
Town of Estes Park, Colorado; SUE
DOYLEN, Trustee of the Town of Estes
Park, Colorado; LORI
JEFFREY-CLARK, Trustee of the Town
of Estes Park, Colorado; CHUCK
LEVINE, Trustee of the Town of Estes
Park, Colorado; WAYNE NEWSOM,
Trustee of the Town of Estes Park,
Colorado; BILL PINKHAM, Trustee of
the Town of Estes Park, Colorado;
ESTES PARK CITIZENS FOR
REPRESENTATIVE GOVERNMENT;
DEWEY SHANKS, Member, Estes Park
Citizens for Representative
Government,

     Defendants-Appellees,

and

No. 06-1515

UNITED STATES OF AMERICA,

Defendant–Intervenor-Appellee.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-CV-153-EWN-MJW)**

---

Robert R. Tiernan, Denver, Colorado, for Plaintiff-Appellant.

Steven J. Dawes (Sophia H. Tsai, with him on the brief), Light Harrington & Dawes, P.C., Denver, Colorado, for Defendants-Appellees.[*]

Lowell V. Sturgill, Jr., Attorney (Troy A. Eid, United States Attorney, Peter D. Keisler, Assistant United States Attorney, and Robert M. Loeb, Attorney, with him on the brief), United States Department of Justice, Washington, D.C., for Defendant- Intervenor-Appellee.

---

Before **LUCERO**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

David Habecker is a former Trustee of the Town of Estes Park, Colorado ("Town") and a self-described atheist. After he refused to stand and recite the Pledge of Allegiance at meetings of the Town Board of Trustees ("Board"), several Town citizens organized a successful campaign to recall him from office. Habecker then brought this federal civil rights suit against the Town and members

---

[*] Defendants Dewey Shanks and Estes Park Citizens for Representative Government were not represented in this appeal.

of the recall committee, alleging violations of the First Amendment and Article VI of the Constitution. Concluding that Habecker lacked standing, that his claims were moot, and that he failed to allege a state action, the district court granted summary judgment to the defendants. We agree that we lack jurisdiction over all claims and **AFFIRM**.

**I**

Habecker was elected in 2000 to fill the seat of a deceased Trustee of the Town Board and was reelected to a full four-year term in 2002. As a Trustee, Habecker voted on routine matters such as budgets, appropriations, and hiring and firing of the Town Manager and Town Attorney. The Board consists of six Trustees and the Mayor of Estes Park, who sits as an ex officio member with a tiebreaking vote. Formal Board meetings are held twice a month and are open to the public.

Events giving rise to this litigation commenced on May 11, 2004, at the Estes Park Board meeting, when Mayor John Baudeck announced a new "policy" of opening meetings with the Pledge of Allegiance and asked that all present stand and recite the Pledge.[1] Mayor Baudeck led the Pledge at the beginning of

---

[1] Although the record contains no explanation of what constitutes a Town or Board "policy," or how such a policy is normally adopted, the parties have stipulated that "the Mayor announced a new policy" when he began opening meetings with the Pledge. We therefore refer to this decision as a Board policy.

each Board meeting thereafter, and was continuing to do so at the time this litigation began.

Habecker joined in standing and reciting the Pledge at the May 11 meeting and several meetings thereafter, but declined to say the words "under God." By September, according to his deposition testimony, Habecker felt hypocritical reciting even this redacted version of the Pledge, considering that others were unlikely to see that he was omitting the words "under God." Thus, at the September 14, 2004, Board meeting, Habecker sat silently during the recitation of the Pledge. He explained at the meeting that he did so because of his objection to the use of the words "under God." Habecker continued to sit silently through the Pledge for the remainder of his service as a Trustee.

Upon learning of Habecker's refusal to recite the Pledge, three citizens of Estes Park, Dewey Shanks, Norman Pritchard, and Richard Clark,[2] formed a committee to recall Habecker from office. Pursuant to Colo. Rev. Stat. § 31-4-501 et seq.,[3] the Colorado recall statute, the group collected signatures and filed a petition for Habecker's recall with the Town Clerk, Vickie O'Connor. As required by § 31-4-502(1)(a)(I), the petition included a statement of grounds for the recall, which read:

---

[2] Richard Clark is the husband of Trustee Lori Jeffrey-Clark.

[3] Section 31-4-501 provides in pertinent part: "Every elected officer of any municipality of the state of Colorado may be recalled from office at any time by the registered electors of the municipality . . . ."

Electors suffer a loss of confidence in Mr. Habecker's ability to represent citizen's [sic] pride, patriotism, and common decency. Prior to Town Board of Trustees meetings, he purposefully and irreverently chooses to publicly sit, facing away from the flag of the United States, during recital of the Pledge of Allegiance. His defiant behavior occurs because the phrase ". . . under God . . ." offends him. He states he intends to continue until the United States Congress strikes the phrase from the Pledge of Allegiance.

Habecker failed to reveal this violation of his principles during campaigns for election. We consider this omission a deliberate tactic to assure voter ballots towards his election. We consider this tactic unethical and unacceptable.

We respect Mr. Habecker's right to free speech under the Constitution of the United States, but insist on maintenance of responsibility, accountability, leadership, respect for others, and high standards of public conduct. His vital beliefs regarding church/state personal conflicts were not revealed at the critical time of election. We do not regard these actions, omissions or motivations honorable [sic], and demand his removal from his elected position.

Pursuant to § 31-4-502(1)(c), O'Connor certified that the form of the petition complied with state law. After the petitioners had collected the requisite number of signatures, O'Connor also determined that the petition met all requirements for a recall election and submitted it to the Board. See § 31-4-503(3)(a), (4). At its meeting on December 14, 2004, the Board received the petition and scheduled a recall election for February 15, 2005.

Habecker filed suit in the District of Colorado on January 28, 2005. Along with several state law claims not pursued on appeal, Habecker complained that: (1) The Pledge statute, 4 U.S.C. § 4, facially violates the Establishment Clause of the First Amendment; (2) The Pledge policy adopted by the Town violates the

Establishment Clause; (3) The recall election would violate his rights to free speech and free exercise of religion under the First Amendment; (4) The Town had established the Pledge as a religious test for public office in violation of Article VI, Clause 3 of the Constitution; and (5) The Colorado recall statute is unconstitutional because it allows an official to be recalled based on constitutionally protected activities.

As defendants, Habecker named the Town, the Board, his five co-Trustees, the Mayor, the Town Clerk, and the Town Attorney (collectively "Town defendants"), as well as the three citizens who formed the recall committee and the committee itself ("recall committee defendants"). Habecker brought his federal claims directly under the First and Fourteenth Amendments and Article VI of the Constitution and under 42 U.S.C. § 1983. In addition to seeking the enjoining of the pending recall election, Habecker sought a judgment declaring the Pledge statute unconstitutional and the recall election unlawful.

Only the recall committee defendants opposed Habecker's motion for a preliminary injunction against the recall election. Because defendants failed to rebut Habecker's assertion that the recall would cause him irreparable harm, the district court granted Habecker's motion on February 10, 2005, enjoining the recall from taking place as scheduled on February 15.

On March 2, 2005, however, the district court granted the recall committee defendants' motion for reconsideration and dissolved the preliminary injunction

on the ground that Habecker had failed to show state action depriving him of his rights as required by the Fourteenth Amendment and § 1983. The Board subsequently rescheduled the recall election, which was held on March 22, 2005. By a vote of 903 in favor of recall to 605 against, Habecker was recalled as a Trustee. Habecker claims that his stance on the Pledge was the predominant reason for his electoral defeat.

After the recall election, Habecker filed an amended complaint naming the Freedom From Religion Foundation, a nonprofit organization that "promote[s] the constitutional principle of separation of church and state," as a co-plaintiff.[4] In addition to the relief claimed in the original complaint, the amended complaint requested reinstatement of Habecker's seat on the Board, monetary damages of his lost Trustee's salary and expenses incurred in opposing the recall, and an order "that any action of the Board of Trustees which depended on the presence or vote of [his] successor be held null and void."

The district court permitted the United States to intervene to defend the facial constitutionality of the Pledge statute. Thereafter, all parties filed cross motions for summary judgment. Concluding that Habecker lacked constitutional standing to challenge either the Pledge statute or the Board policy, that Habecker's request for a declaratory judgment was moot given the intervening election, and that Habecker failed to allege state action sufficient to support a

---

[4] The Freedom From Religion Foundation is not a party to this appeal.

- 7 -

claim under § 1983, the district court granted summary judgment to the defendants and intervenor the United States.[5]  Habecker timely appeals the grant of summary judgment as to three claims:  (1) the Pledge statute facially violates the Establishment Clause, (2) the Board's recitation policy violates the Establishment Clause, and (3) the Board's policy violates Article VI.[6]  We have jurisdiction to hear his appeal under 28 U.S.C. § 1291.

## II

We review orders granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  See Schulz v. City of Longmont, 465 F.3d 433, 437 (10th Cir. 2006).  Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

---

[5] Having dismissed Habecker's federal law claims, the district court declined to exercise supplemental jurisdiction over his state law claims. Habecker does not appeal that aspect of the court's decision.

[6] Habecker's opening brief contains a section entitled "Free Exercise Clause," but the arguments set forth thereunder relate exclusively to the Establishment Clause.  Assuming that this heading indicates Habecker's intent to appeal his free exercise claim, he has failed to "advanc[e] reasoned argument as to the grounds for the appeal," and we will not consider it.  See Am. Airlines v. Christensen, 967 F.2d 410, 415 n.8 (10th Cir. 1992); Fed. R. App. P. 28(a)(9).

It appears that Habecker believes the district court dismissed his Article VI claim as unraised.  In fact, the district court considered Habecker's claim that the recall election made the Pledge a de facto "oath of office" in violation of Article VI.  The district court also read Habecker's motion for summary judgment as asserting a new and separate Article VI claim based on actual "forced recitation" of the Pledge, and dismissed that claim as an untimely motion to amend. Habecker does not urge the latter claim on appeal.

R. Civ. P. 56(c).  As the party seeking to invoke the jurisdiction of the federal courts, Habecker bears the burden of alleging facts that support jurisdiction. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Summary judgment based on lack of jurisdiction should be granted only when "the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving [jurisdiction]."  Day v. Bond, 500 F.3d 1127, 1132 (10th. Cir. 2007).

Habecker's appeal cannot proceed on the merits in the absence of an Article III case or controversy.  Lance v. Coffman, 127 S. Ct. 1194, 1196 (2007).  Article III of the Constitution grants federal courts jurisdiction only over "cases" and "controversies."  U.S. Const. Art. III, § 2, cl. 1.  "Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious." Mink v. Suthers, 482 F.3d 1244, 1253 (10th Cir. 2007).

Standing, a component of the case-or-controversy requirement, serves to ensure that the plaintiff is "a proper party to invoke judicial resolution of the dispute."  Warth v. Seldin, 422 U.S. 490, 518 (1975).  To demonstrate Article III standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court.

Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (quotations omitted). We refer to these three familiar requirements as injury in fact, causation, and redressability. Lance, 127 S. Ct. at 1196.[7]

Even if standing exists when a suit is filed, Article III also requires that the controversy remain live throughout the litigation. United States v. Seminole Nation of Okla., 321 F.3d 939, 943 (10th Cir. 2002). If a controversy ceases to exist, the plaintiff's claims become moot and the court has no jurisdiction to entertain them. Id.; see also S. Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.").

Habecker identifies three injuries as sources of standing in this case: (1) his loss of his elected office; (2) social pressure, rising to the level of government coercion, to recite the Pledge against his beliefs; and (3) exposure to the Pledge at Board meetings. We conclude that Habecker cannot show the existence of a case or controversy. His loss of elected office, although an injury in fact, was the

_____

[7] Besides these three elements of standing, which are required by Article III and are referred to as "constitutional" standing requirements, the Supreme Court recognizes a set of "prudential" standing concerns that may prevent judicial resolution of a case even where constitutional standing exists. See Allen v. Wright, 468 U.S. 737, 751 (1984). Because we conclude that Habecker lacks constitutional standing, we need not consider the issue of prudential standing.

result of an intervening cause—the electorate—and is not fairly traceable to the defendants. His claimed injury based on social pressure to recite the Pledge does not constitute an injury in fact under Article III, and any controversy arising from an injury based on exposure to the Pledge is now moot given that Habecker is no longer required to attend Board meetings.

**A**

As primary support for standing, Habecker relies on the loss of his elected position as a Trustee of the Board. Without a doubt, this alleged injury constitutes an injury in fact. His removal from office is a concrete and particularized harm, in that he is no longer able to enjoy the benefits of his former position. See Lujan, 504 U.S. at 561 n.1; see also Rutan v. Republican Party, 497 U.S. 62, 77-78 (1990) (recognizing the loss of public employment as an injury in fact). Additionally, his loss of office is an "actual" injury, in that it has already occurred, and he is no longer serving as a Trustee.

Injury in fact, however, does not complete our standing inquiry. Habecker must also show that this injury was caused by the alleged actions of the defendants, and that it will be redressed if we grant the relief he requests. Although causation and redressability are often closely related, Nova Health Sys. v. Gandy, 416 F.3d 1149, 1159 (10th Cir. 2005), the twin requirements remain distinct and must be separately met, see Allen v. Wright, 468 U.S. 737, 753 n.19 (1984). We conclude that Habecker has not sufficiently alleged that the

- 11 -

defendants caused his loss of office. In the absence of causation, he has no standing to bring this case, and we need not consider whether his injury is redressable.

To demonstrate causation, Habecker must show that his injury is "fairly traceable" to the defendants' actions. Lujan, 504 U.S. at 560. Habecker's recall from office resulted from the following chain of events. First, Mayor Baudeck initiated the pledge policy, leading to Habecker's decision to sit out the Pledge based on his objection to the phrase "under God." After Habecker ceased reciting the Pledge and explained his discomfort with the phrase "under God," the recall committee defendants acted. Committee members then succeeded in collecting sufficient signatures to trigger a recall election under state law. When this election took place, a majority voted against Habecker, effecting his removal from office. Habecker thus contends that the Town and the recall committee caused his loss of office.

Although the "traceability" of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation, Article III does "require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Nova Health Sys., 416 F.3d at 1156 (citations omitted). If "speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action," this burden has not been met. Id. at 1157 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 45 (1976)). Moreover, where "the independent action

of some third party not before the court"—rather than that of the defendant—was the direct cause of the plaintiff's harm, causation may be lacking. Simon, 426 U.S. at 41-42. That an injury is indirect does not necessarily defeat standing, "[b]ut it may make it substantially more difficult . . . to establish that, in fact, the asserted injury was the consequence of the defendants' actions." Warth, 422 U.S. at 504-05.

Between the actions of the defendants and Habecker's ultimate removal from office lies an indispensible act by a third party not before the court: the votes cast by voters of the town of Estes Park. Habecker reasons that those who voted against him were motivated by his failure to recite the Pledge at Board meetings, and thus, that his injury was ultimately caused by the challenged acts of the defendants. As evidentiary support for this argument, Habecker has adduced a collection of correspondence received by the Board and by Habecker himself between the September 14 Board meeting and his eventual recall, most of which addresses Habecker's failure to recite the Pledge and his perceived religious beliefs. He points to this correspondence as evidence that Estes Park voters were indeed motivated by these issues.[8]

We simply cannot make such an inferential leap regarding the motivations of individual voters. When the voters cast their ballots, the decision to vote for or

---

[8] Much of the correspondence offered by Habecker was sent by individuals who do not live and vote in Estes Park, and thus, is not relevant to the motivations of Estes Park voters.

against Habecker's recall was a purely private matter. We cannot, with any degree of certainty, know what considerations motivated the 903 individuals who chose to vote in favor of recalling Habecker. Any assumption in this regard would be a "speculative inference" insufficient to support causation. Nova Health Sys., 416 F.3d at 1157; see also Simon, 426 U.S. at 42-43 (holding that the IRS's advantageous tax treatment of hospitals who denied certain services to the indigent did not cause indigent plaintiffs' injury, because "[i]t is purely speculative whether the denials of service . . . fairly can be traced to [the IRS's] 'encouragement' or instead result from decisions made by hospitals without regard to the tax implications").

Because we cannot presume that the voters' decision to recall Habecker was connected to his position on the Pledge or to his religious beliefs, this decision breaks the chain of causation between the Pledge controversy and Habecker's electoral loss. Without this link, Habecker's asserted injury cannot be said to be fairly traceable to the defendants' actions, and does not give rise to standing to pursue his claims.

**B**

Habecker argues that he was injured because he was coerced into reciting the Pledge in contravention of his conscience and beliefs. In advancing this contention, Habecker concedes that he was not actually forced to recite the Pledge, but argues that he was effectively required to do so because he feared

retribution from voters and public identification as a religious "outsider."  We conclude that the pressure Habecker experienced did not amount to a requirement that he recite the Pledge, and does not rise to the level of an injury in fact.

An actual government requirement that an individual make statements contrary to his religious beliefs is clearly an injury in fact.  See Torcaso v. Watkins, 367 U.S. 488, 495-96 (1961) (overturning a state statute conditioning public employment on a religious oath).  Social pressure to participate in a religious exercise, however, has been treated as an injury in fact only in a public school context.  In that context, the Court has held that such pressure is functionally equivalent to a government requirement, due to the unique impressionability of schoolchildren combined with the strong pressure they feel to attend even non-mandatory school activities.  See Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 311-12 (2000); Lee v. Weisman, 505 U.S. 577, 594 (1992) ("The injury caused by the government's action . . . is that the State, in a school setting, in effect required participation in a religious exercise."); Valley Forge Christian Coll. v. Americans United for Separation of Church and State, 454 U.S. 464, 487 n.22 (1982) (explaining that standing existed in prior Establishment Clause cases "because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them").

Habecker contends that, although an adult, he was susceptible to social pressure because of his status as an elected representative subject to recall. Thus, he urges us to adopt the reasoning applied in a public school context. In the cases cited above, the student-plaintiffs experienced religious coercion at some of "life's most significant occasions." Lee, 505 U.S. at 595. The Court concluded that the significant nature of these occasions made them effectively mandatory, because no student should be expected to make the choice not to attend. Santa Fe, 530 U.S. at 311-12 (attendance at football games); Lee, 505 U.S. at 595 (attendance at graduation).

In contrast, Habecker's attendance at Board of Trustees meetings was the result of a voluntary decision to seek and serve in public office. Those who stand for public office voluntarily subject themselves to public scrutiny. In the only Supreme Court case involving an elected official challenging a religious utterance at sessions of a public body, the Court recognized no special pressures on the legislator-plaintiff, holding that he was "an adult, presumably not readily susceptible to 'religious indoctrination' or peer pressure." Marsh v. Chambers, 463 U.S. 783, 792 (1983) (citations omitted).

Although we do not doubt that Habecker felt strong pressure to recite the Pledge along with the rest of the Board, his attendance at Board meetings as a Trustee is not analogous to student attendance at important school functions. Defendants did not impose a de facto requirement that he recite the Pledge.

- 16 -

Accordingly, Habecker's claimed injury of coercion is not a cognizable injury in fact and does not create the requisite standing to pursue the present claims.

**C**

Finally, Habecker alleges that he was harmed by merely being subjected to the religious phrase "under God"—a phrase with which he disagrees. Habecker analogizes his situation to that of Ernest Chambers, the plaintiff in <u>Marsh</u>, a legislator who challenged the Nebraska legislature's practice of opening its daily sessions with a prayer. <u>See</u> 463 U.S. at 784-85. In essence, Habecker reasons that because Chambers' standing was apparently based in part upon daily exposure to prayer, he too has standing based on his exposure to the Pledge

during Board meetings.[9]  We need not decide whether Habecker is correct, because we hold that any controversy arising from such an injury is moot.

As Habecker is no longer a member of the Board, he is no longer required to attend biweekly meetings and listen to the Pledge.  He also does not claim any continuing injury that flows from his past exposure to the Pledge.  Any controversy arising from his attendance at meetings in his former role as Trustee has therefore ceased to exist.  Seeking to overcome this obvious deficit, Habecker argues that his claims are not moot, because he is entitled to attend Board meetings as a member of the public and would be subjected to the Pledge if he did

_____

[9] In upholding Chambers' standing to sue "as a member of the legislature and as a taxpayer whose taxes are used to fund the chaplaincy," id. at 787 n.4, the Supreme Court affirmed the Eighth Circuit's holding that Chambers had standing in part because he was directly confronted with the opening prayers.  The Court cited the following explanation from the Eighth Circuit opinion:

> [Besides injury as a taxpayer], Chambers properly asserts particularized injury in that, as a member of the legislature, he squarely confronts the prayer program on a daily basis. . . . Chambers has found some of the prayers so offensive to his values that he has excused himself on occasions during the prayers.

Chambers v. Marsh, 675 F.2d 228, 231 & n.5 (8th Cir. 1982).
Although the Supreme Court has never elaborated on this source of standing, the Court has often recognized standing where a plaintiff has been directly exposed to a religious symbol displayed by a government entity.  E.g., Van Orden v. Perry, 545 U.S. 677 (2005) (reaching the merits in a challenge to a Ten Commandments display by a plaintiff who regularly encountered the display); see also O'Connor v. Washburn Univ., 416 F.3d 1216, 1223 (10th Cir. 2005) ("[a]llegations of personal contact with a state-sponsored image" can constitute an injury in fact); Doe v. Tangipahoa Parish Sch. Bd., 494 F.3d 494, 497 (5th Cir. 2007) (standing exists if plaintiffs "were exposed to, and may thus claim to have been injured by, invocations given" at school board meetings).

so. As Habecker admits, however, he did not make this claim of continuing controversy before the district court.

We do not typically decide issues "not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). This rule is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Id. (quoting Hormel v. Helvering, 312 U.S. 552, 556 (1941)). We have "discretion to make exceptions [to this rule] in extraordinary circumstances," Shoels v. Klebold, 375 F.3d 1054, 1062 (10th Cir. 2004), but will do so only when "the issues involved are questions of law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice," Petrini v. Howard, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (citation omitted).

We decline to exercise our discretion to declare this an extraordinary circumstance under Shoels. Whether Habecker has standing based on having to listen to the words "under God" may well be a question of law. Proper resolution of that question is anything but settled, however, as it is one of first impression in our circuit. How then could a litigant claim that there can be no doubt of its proper resolution, let alone attempt to lay a solid claim of miscarriage of justice, on such roily water? Because we decline to consider Habecker's newly raised

claim of continuing injury, it follows that any controversy arising under this theory is moot.

## III

Because we lack jurisdiction to consider Habecker's claims, we **AFFIRM** the district court's decision to grant summary judgment in favor of defendants and intervenor the United States.