**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 17, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

FELIPE ANDRES-MATEO,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 21-9505
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Petitioner Felipe Andres-Mateo is a native and citizen of Guatemala. An

immigration judge (IJ) denied his application for withholding of removal and relief

under the Convention Against Torture (CAT), and the Board of Immigration Appeals

(BIA) affirmed the denial. Petitioner now challenges the denial of withholding of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal.[1]  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny his petition for review.

## BACKGROUND

Twice in 2012 Petitioner entered the United States without valid entry documents.  Border agents apprehended him in May 2012, and the Department of Homeland Security (DHS) removed him in June.  He then reentered the country illegally in August.

In 2020 U.S. Immigration and Customs Enforcement officers apprehended Petitioner, and DHS reinstated its removal order.  An asylum officer conducted a reasonable-fear interview and determined that Petitioner had not established past persecution or torture, or a reasonable fear of future persecution or torture.  Petitioner challenged that determination, and an IJ vacated the asylum officer's decision after a hearing.

Proceeding pro se, Petitioner applied for withholding of removal and protection under the CAT on the ground that he fears death at the hands of Mara 18 gang members upon his return to Guatemala.

---

[1] Petitioner does not challenge the denial of CAT relief, so we do not address that issue.  *See Addo v. Barr*, 982 F.3d 1263, 1266 n.2 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived . . . ." (internal quotation marks omitted)); *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 n.6 (10th Cir. 2008) (court will not consider claim if party "has failed to advance reasoned argument as to the grounds for the appeal" (brackets and internal quotation marks omitted)).

At the hearing before the IJ, Petitioner testified that he purchased a plot of land in Guatemala in March 2012, but shortly thereafter he went to the United States "to fight for a better life." Admin. R. at 107. After his deportation in June, he went back to Guatemala to work on his land. Two Mara 18 gang members came to his property in July. They told him they wanted his land but did not harm him. The next week, they returned with a third gang member and asked Petitioner if he was going to give them his land. When he refused, they hit him on his stomach and face while one of them held a machete. One asked, "[W]hat do you prefer, your life or your land?" *Id.* at 113. Fearful, Petitioner told them to "keep the land" and said he would "disappear." *Id.* The gang members told him they would let him go "[t]his time" but "next time" they were "going to get [him]" if they crossed paths because they "don't play." *Id.*

Following the attack, Petitioner walked four hours to a police station, with no money or belongings. He reported the attack, but the police were unable to help him because he could not identify his attackers by name. He stayed in the area near the police station for two weeks, homeless and hiding from his attackers, then fled to the United States. Petitioner testified that he "cannot go back because [he is] afraid that [the Mara 18 gang members] could kill [him]." *Id.* at 129. But he acknowledged they do not know his name and would "just be looking for [his] face in the entire country of Guatemala." *Id.* at 130.

The IJ denied Petitioner's application for withholding of removal. The IJ expressed concerns about Petitioner's credibility because "some of his testimony is

internally inconsistent and inconsistent with the record." *Id.* at 56. But the IJ

"stop[ped] short of finding that [he] is not credible, and accept[ed] that [his] core

claim has remained the same"—namely, "that he fears members of Mara 18 who

robbed him of his land and have threatened to kill him." *Id.* at 58. Even so, the IJ

found that Petitioner failed to meet his burden to establish the likelihood of future

persecution in Guatemala. Alternatively, the IJ found that Petitioner failed to meet

his burden to establish past persecution.

In finding no likelihood of future persecution, the IJ reasoned that

(a) Petitioner did "not provide[] a very persuasive explanation as to why Mara 18

gang members would still want to pursue him," *id.* at 59; (b) the gang members are

motivated by "greed and power," not a desire "to punish [Petitioner] for any

protected ground," *id.* at 60; (c) Petitioner "has family still in Guatemala who are not

receiving threats or being extorted and live a substantial distance" from the land that

was taken from Petitioner, *id.*; and (d) Petitioner did not encounter any gang

members during the two weeks he remained homeless and "fairly exposed" in

Guatemala after the attack, *id.*

In finding no past persecution, the IJ noted that (a) though "certainly

terrifying" when "combined," the two encounters with the gang members did not rise

to the necessary "level of emotional and/or physical harm," as evidenced by the fact

that Petitioner was able to walk four hours after the attack and did not require any

medical treatment, *id.* at 58; (b) Petitioner did not provide any evidence that the gang

members targeted him for any protected ground, such as his political opinion or

membership in a particular social group (PSG); and (c) Petitioner did not establish a nexus between the harm he suffered and a protected ground.

On appeal to the BIA, Petitioner asserted the IJ violated his due-process rights when she failed to develop the record on his membership in a PSG and other protected grounds, given his pro se status at the hearing. Petitioner also challenged the IJ's finding that he did not suffer past persecution. The BIA adopted and affirmed the IJ's decision. It rejected Petitioner's contention that he had not received a full and fair hearing. And it found no factual or legal error in the IJ's determinations on lack of past persecution and no likelihood of future persecution.

## DISCUSSION

Echoing his arguments before the BIA, Petitioner argues that the agency deprived him of a full and fair hearing by not affirmatively developing the record on his behalf and thus violated his due-process rights.[2] He also argues that the agency improperly analyzed his past-persecution claim in denying his application for withholding of removal.

### 1. Principles of Judicial Review

This case involves a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency determination, "limit[ing] our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279

---

[2] Petitioner was not represented by counsel for a portion of the agency proceedings, including his removal hearing. But in this court he has been represented by counsel, so his pleadings before this court are not entitled to a liberal construction, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

(10th Cir. 2006).  When the BIA adopts the IJ's rationale by reference, as it did here, "[w]e may consult the IJ's decision to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).

We review de novo Petitioner's constitutional claim, *see Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017), and the BIA's legal conclusions, *see Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).  We review the BIA's findings of fact under the substantial-evidence standard, *id.*, which is "highly deferential," *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004).  "[W]hether an alien has demonstrated persecution is a question of fact" in this circuit.  *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) (internal quotation marks omitted).  Our duty under the substantial-evidence standard "is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150.  The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4).

## 2.  Due Process

Because our ruling on Petitioner's due-process claim has implications for his withholding claim, we begin there.  Petitioner argues that the IJ had an affirmative duty to develop the record on his membership in a PSG or another protected ground listed in 8 U.S.C. § 1231(b)(3)(A)—the statute outlining the requirements for withholding of removal—because Petitioner appeared pro se at his removal hearing.  He further argues that he was deprived of a full and fair hearing because the IJ did not fulfill this duty.

6

An alien facing removal is "entitled only to . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Vladimirov v. Lynch*, 805 F.3d 955, 962 (10th Cir. 2015) (internal quotation marks omitted).  To prevail on his due-process claim, Petitioner "must establish both that he was deprived of due process and that that deprivation prejudiced him." *Lucio-Rayos*, 875 F.3d at 576.

Even assuming the IJ had a duty to develop the record for Petitioner because he was a pro se applicant,[3] Petitioner has not established that he was deprived of due process.  We agree with the BIA that the record shows Petitioner "was able to fully present his case and received a fair hearing."  Admin. R. at 2.  The IJ complied with the requirements of 8 C.F.R. § 1240.10 by providing Petitioner with a list of available pro bono legal services and by advising him of his rights—including his right to obtain counsel at no expense to the government, to present and object to evidence, to present and cross-examine witnesses, to designate a country of removal, and to appeal.  The IJ explained the relief options available to Petitioner and directed him to focus his testimony on "what faces you in Guatemala," "not . . . what you have here in the United States." Admin. R. at 99.  The IJ also gave Petitioner opportunities to explain discrepancies in his testimony, probed him about the incidents with the Mara 18 gang, and asked him why he is afraid to return to Guatemala.

---

[3] "Although this court has not explicitly recognized this 'affirmative' duty in a precedential decision, other circuits have." *Matumona v. Barr*, 945 F.3d 1294, 1304 (10th Cir. 2019) (citing cases and assuming, "[f]or purposes of this appeal only," "that there is a duty to develop the record for a pro se applicant").

Moreover, the record belies Petitioner's contention that the IJ did not ask enough questions about the basis for his withholding application. The IJ asked Petitioner to identify a PSG in connection with his application: "You . . . asked me to check the box, for you, for a particular social group. Can you tell me what particular social group you're referring to?" *Id.* at 119. Petitioner answered, "The Mara 18, the corruption that is – exists there in my country." *Id.* And when asked a follow-up question as to why he "would . . . be singled out," Petitioner answered, "They kill the people who don't give them anything. They go on us for money . . . ." *Id.* at 120. As for "not engag[ing] in sufficient fact-finding [on] other protected grounds," Pet'r's Opening Br. at 17, the IJ asked specific, direct questions about Petitioner's political opinion: "Were you politically active in Guatemala? . . . [Y]ou asked me to amend your application to include political opinion. So, I'd like to understand more about your political opinion and what you have done to demonstrate your political opinion," Admin. R. at 119. Petitioner responded, "No. I didn't do anything." *Id.* In short, Petitioner had ample opportunity to provide the testimony he says should have been elicited. As the government aptly states, "That [Petitioner] did not fear Mara 18 based upon a protected ground is not illustrative of a failure in the [IJ's] questioning." Resp't's Answer Br. at 21.[4]

---

[4] Although the failure to establish a deprivation of due process ends our inquiry, we note that Petitioner also has not established prejudice from the IJ's alleged failure to develop the record. "To prevail on this argument, Petitioner must identify evidence that the IJ should have elicited that would have altered the BIA's finding . . . ." *Matumona*, 945 F.3d at 1304. As explained in the next section, he has yet to articulate a legitimate PSG, let alone present evidence to support his

### 3. Withholding of Removal

To obtain withholding of removal, Petitioner must demonstrate that his "life or freedom would be threatened in [Guatemala] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also id.* § 1229a(c)(4)(A) (noncitizen applying for relief from removal has burden to establish entitlement to relief). As reflected in the "because of" language in § 1231(b)(3)(A) and the "on account of" language in 8 C.F.R. § 1208.16(b),[5] he must also show a nexus between the harm asserted and a protected ground. That is, there must be "a clear probability of persecution on account of a protected ground." *Rodas-Orellana v. Holder*, 780 F.3d 982, 987 (10th Cir. 2015) (internal quotation marks omitted).

Petitioner says that the record contains substantial, corroborated evidence that he suffered past persecution on account of membership in a PSG.[6] But he presents

---

membership in one. Nor has he articulated a political opinion or presented evidence to support having one.

[5] The implementing regulation on withholding of removal states: "The burden of proof is on the applicant for withholding of removal . . . to establish that his or her life or freedom would be threatened in the proposed country of removal *on account of* race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b) (emphasis added).

[6] Although he does not say as much, we presume from the absence of any analysis on the likelihood of future persecution that Petitioner is relying on the rebuttable presumption in § 1208.16(b)(1)(i): "If the applicant is determined to have suffered past persecution in the proposed country of removal on account of [a protected ground], it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." The government can rebut this presumption with evidence that there has been

only an argument regarding the agency's determination that the harm he suffered did not rise to the level of persecution—not its findings on the remaining two requirements for a withholding claim: (1) a protected ground (here, membership in a PSG), and (2) a nexus between the harm suffered and a protected ground. The failure to challenge an agency finding that is an independently sufficient basis for the denial of relief forecloses success before this court, regardless of the merits of an alternative ground. *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994).

As for membership in a PSG, the agency found that Petitioner did not provide "testimony or evidence to suggest that he is a member of any particular social group." Admin. R. at 59. And Petitioner concedes "there is no clear record what is Petitioner's PSG," Pet'r's Opening Br. at 17. Although he vacillates before this court between claiming membership in a PSG consisting of "indigenous land owners who lack protection," *id.* at 1, and "belong[ing] to at least two particular social groups— landowners and indigenous group [sic]," *id.* at 18, he does not explain why any of these groups is legally sufficient, and we will not craft arguments for him, *see Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).

As for the nexus requirement, the agency found Petitioner did not establish a nexus between the harm he suffered and a protected ground because the gang members who attacked him were motivated by "greed and power," not a desire "to

---

"a fundamental change in circumstances" or that the applicant "could avoid a future threat . . . by relocating to another part of the proposed country of removal . . . ." § 1208.16(b)(1)(i)(A), (B).

10

punish [him] for any protected ground," Admin. R. at 60; *see also id.* at 59 (stating that Petitioner "was targeted by Mara 18 simply for the purpose of Mara 18 expanding their wealth and land ownership").  This finding is consistent with Petitioner's own testimony about the Mara 18 gang:  "They kill the people who don't give them anything.  They go on us for money . . . ."  *Id.* at 120.  Petitioner's brief in this court does not address this finding.

As outlined above, the agency made detailed findings of fact on all aspects of Petitioner's withholding claim when it denied him relief.  Because Petitioner has not even challenged the agency's findings on two of the three requirements for his claim, he has not satisfied his burden to prove that "any reasonable adjudicator would be compelled to conclude to the contrary."  *See* 8 U.S.C. § 1252(b)(4).

## CONCLUSION

The petition for review is denied.

Entered for the Court

Harris L Hartz
Circuit Judge