FILED
United States Court of Appeals
Tenth Circuit

April 21, 2026

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

KATRINA ROBINSON,

    Plaintiff - Appellant,

v.

NATIONSTAR MORTGAGE, LLC,
d/b/a Mr. Cooper,

    Defendant - Appellee.

No. 24-7083
(D.C. No. 6:21-CV-00380-RAW)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **BACHARACH**, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

Katrina Robinson appeals the district court's judgment in favor of defendant on claims arising under the Fair Housing Act ("FHA") and Oklahoma state law. On summary judgment, the district court concluded Robinson lacked standing to bring her FHA claim and declined to exercise supplemental jurisdiction over the state law claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**

Robinson is the daughter of the late Kathalene Terrell, who owned a house ("Property") in Muskogee, Oklahoma. Defendant Nationstar Mortgage, LLC, doing business as Mr. Cooper ("Nationstar"), held a mortgage on the Property as security for a promissory note Terrell had signed. The mortgage required Terrell to maintain hazard insurance, and the mortgage payments included premiums for the insurance. Robinson was not a signatory to the note or the mortgage, but she was the transfer-on-death beneficiary of the Property.

Terrell's sole income was government disability benefits. In 2015, she was hospitalized and fell behind on her mortgage payments. Nationstar notified her that it was considering foreclosure. In November 2015, Terrell asked Nationstar for a reasonable accommodation under the FHA. In February 2016, Nationstar filed a foreclosure action against Terrell and Robinson. Terrell counterclaimed for breach of contract and failure to accommodate under Oklahoma's fair housing laws, alleging Nationstar had made no effort at accommodation.

Nationstar prevailed in the foreclosure action and on Terrell's counterclaims. But in April 2018, while the case was on appeal, Terrell and Nationstar entered into a loan-modification agreement, which resulted in an increased balance and interest rate effective July 1, 2018. The state court vacated its foreclosure judgment but left in place its denial of Terrell's counterclaims.

Also in April 2018, Nationstar informed Terrell's insurer, American Farmers & Ranchers Mutual Insurance Company ("AFR"), that "based upon [a] site

2

inspection, it had "reason to believe" the Property "may be vacant." Aplee. Suppl. App. vol. 1 at 241 (capitalization omitted). Nationstar "suggest[ed]" AFR verify the Property's status with Terrell and inform Nationstar "if the possible vacancy in any way impairs, limits, or restricts the Homeowner's or Fire and Extended Coverage now in place or would cause any premium increase." *Id.* Nationstar added: "Please terminate coverage only on the [Property] immediately. Pursuant to the terms of the Mortgage/Deed of Trust, any unearned premiums should be refunded to us." *Id.*

In turn, AFR asked Terrell's insurance agent, the Ogden Insurance Agency, Inc. ("Ogden"), to inspect the Property for vacancy. An Ogden agent, Marla Mosley, inspected the property, rang the doorbell several times, and took pictures. "Mail and papers were packed in the mailbox and paper box." Aplt. App., vol. 5 at 176. She also tried to call all the telephone numbers for Terrell, "but they had been disconnected." *Id.* Mosley reported to AFR that the Property "appear[ed] vacant" and that a neighbor said she had not seen anyone at the Property "in a long time." Aplee. Suppl. App. vol. 2 at 241. On May 1, 2018, AFR notified Ogden that it would not renew Terrell's policy after it expired in July 2018 because of "Condition/Upkeep." *Id.* at 250. Although "Vacant/Unoccupied" was an option on the form, *id.*, AFR did not select it. AFR also mailed Terrell notice that the policy would not be renewed and that AFR was returning unearned premiums to Nationstar.

Meanwhile, on April 25, 2018, Nationstar filed a claim with AFR for storm damage to the Property's roof. Terrell, however, withdrew the claim, and AFR closed the claim file on June 25, 2018.

3

In July 2018, after receiving notice from AFR that the policy had been cancelled, Nationstar called Ogden, which verified that the policy had been cancelled for an "underwriting reason," *id.* at 175 (capitalization omitted). Nationstar then twice notified Terrell that she was required to obtain insurance and, if she did not, Nationstar would purchase coverage, as the mortgage required, and such coverage might be more expensive than insurance Terrell could buy herself. When Terrell did not obtain insurance, Nationstar informed her that it had purchased insurance. The new insurance policy increased Terrell's monthly payment. Nationstar informed Terrell that she still could obtain a policy herself, but Terrell never did so. Nationstar continued to maintain insurance on the Property.

In an April 30, 2020, letter to the Oklahoma Insurance Department ("OID") Mosley recounted that on May 1, 2018, AFR had notified Ogden that the reason for nonrenewal of Terrell's policy was "Condition/Upkeep/Vacant/Unoccupied." Aplt. App. vol. 5 at 176. Mosley apparently sent her letter in response to an investigation Terrell asked the OID to open regarding cancellation of her policy.[1]

Terrell died in June 2021, and Robinson inherited the Property. At the time of Terrell's death, payments on the Property were current. In September 2021, Robinson called Nationstar to report that her mother had died and Robinson was

---

[1] Terrell also allegedly filed a housing discrimination complaint with the United States Department of Housing and Urban Development that remained pending as of the date Robinson filed the complaint in this action in 2021.

living at the Property.  In October 2021, after Robinson missed a payment, Nationstar

mailed a past-due notice to the Property's address.

In December 2021, Robinson filed the action underlying this appeal.  She

asserted Nationstar and Ogden retaliated against her in violation of the FHA, *see*

42 U.S.C. § 3605, and Okla. Stat. tit. 25, § 1452(A)(17), both of which prohibit

discrimination in transactions related to residential real estate.  She also asserted a

violation of the Oklahoma Consumer Protection Act and a claim of fraud.

Nationstar filed a motion for summary judgment.[2]  Robinson filed a motion for

partial summary judgment on the FHA claim.  After obtaining supplemental briefs on

the traceability component of Article III standing, which the parties had not

previously briefed, the district court concluded Robinson lacked standing to bring her

FHA claim.  The court determined that Nationstar's allegedly retaliatory conduct was

"reporting to AFR that the Property appeared vacant" and that Robinson's "purported

concrete injury is the financial impact to [her] of having to pay the increased

payments to cope with the lender-placed insurance that was necessary after AFR

non-renewed the [p]olicy."  Aplt. App. vol. 2 at 22.  The court concluded that

because of the intervening actions of Terrell, Ogden, and AFR, Robinson's claimed

injuries were not fairly traceable to Nationstar's suggestion to AFR that the Property

was vacant.  The court observed that there was "scant evidence in the record about

---

[2] Ogden also filed a motion for summary judgment, which the district court granted.  On appeal, Robinson and Ogden settled.  We therefore limit our ensuing discussion to the disposition of the claims against Nationstar.

why AFR declined to renew the [p]olicy"; for example, there was "no deposition testimony or declarations from AFR employees." *Id.* at 24. The court also concluded that because the nonrenewal was not for vacancy, it was "hard to see how there could be a substantial likelihood that Nationstar's vacancy report caused AFR's [nonrenewal] of the [p]olicy." *Id.* at 25. This left the court with only speculation about the impact that Nationstar's report had on the nonrenewal, which was insufficient to show traceability.

Because Robinson lacked standing to assert the only federal claim she had advanced, the district court granted Nationstar's motion, denied Robinson's motion, dismissed the FHA claim for lack of jurisdiction, and declined to exercise supplemental jurisdiction over the state law claims. Robinson timely appeals.

**II**

We review the disposition of cross-motions for summary judgment de novo, "view[ing] each motion separately, in the light most favorable to the non-moving party, and draw[ing] all reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016) (internal quotation marks omitted). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment based on lack of jurisdiction should be granted only when the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving jurisdiction." *Habecker v.*

6

*Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008) (brackets and internal quotation marks omitted).

## III

Standing is part of the case-or-controversy requirement of Article III of the United States Constitution. *Id.* Article III standing has three components. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be *fairly traceable* to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Id.* at 1223–24 (emphasis added) (internal quotation marks omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 1224 (internal quotation marks omitted).

Like the district court, we rest our disposition on the second component, traceability, and therefore need not reach Nationstar's arguments on the other components. Traceability "need not rise to the level of proximate causation," but Article III "require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id.* at 1225 (internal quotation marks omitted). "If speculative inferences are necessary to connect a plaintiff's injury to the challenged action, this burden has not been met." *Id.* (brackets and internal quotation marks omitted). Importantly, "where the independent action of some third party not before

7

the court—rather than that of the defendant—was the direct cause of the plaintiff's harm, causation may be lacking." *Id.* (internal quotation marks omitted). "That an injury is indirect does not necessarily defeat standing, but it may make it substantially more difficult to establish that, in fact, the asserted injury was the consequence of the defendants' actions." *Id.* (brackets, ellipsis, and internal quotation marks omitted).

We conclude that Robinson's alleged injury—having to pay higher premiums for the lender-placed insurance Nationstar secured—is not fairly traceable to Nationstar's allegedly retaliatory act of reporting to AFR that the Property appeared vacant. AFR did not cancel the policy because of Nationstar's report. All that report led to was AFR's inspection of the Property. After the inspection, AFR decided not to renew the policy due to the Property's condition and the lack of upkeep, which are evident in the photographs Ogden's agent, Mosley, sent to AFR. If Robinson suffered any injury due to nonrenewal of the policy, it did not come from Nationstar's report of potential vacancy but from AFR's independent decision not to renew the policy after it had inspected the Property. Although Nationstar's letter to AFR asked AFR to "terminate" the Policy, the letter's context makes clear that termination was dependent on AFR determining that any "possible vacancy in any way impair[ed], limit[ed], or restrict[ed] the Homeowner's or Fire and Extended Coverage now in place," Aplee. Suppl. App. vol. 1 at 241.

Moreover, any injury arising from having to pay the increased insurance premiums is further causally separated from Nationstar's report by Terrell's own

8

actions. After being notified she could obtain insurance on her own and that such insurance would likely be less expensive than lender-placed insurance, she never did. And even earlier, Terrell declined the opportunity to improve the Property's condition when she withdrew the insurance claim Nationstar had filed for storm damage to the roof, which might have helped avoid AFR's nonrenewal of the policy. We agree with Nationstar that AFR and Terrell "took, or failed to take, the actions that led to the increased mortgage payments," and because "neither are a party to this case, that break in the chain destroys traceability." Aplee. Response Br. at 17.

Robinson's arguments do not persuade us otherwise. Principally, she points to the letter Mosley sent to the OID in 2020 stating that in 2018, AFR told Ogden it was cancelling the policy not only because of the Property's condition and upkeep, but also because it was vacant and unoccupied. The district court considered Mosley's letter to be only a mere "scintilla of evidence," and therefore insufficient to avoid summary judgment, because it "was written years after the actual non-renewal by an individual who was not involved in the actual non-renewal process" and therefore "cast[] little light on the question at issue." Aplt. App. vol. 2 at 27 n.17. We are inclined to agree. But even if vacancy was the *sole* reason for AFR's decision, our conclusion would be the same—AFR inspected the Property and made an independent determination not to renew the policy, which causally severs the connection between Nationstar's report to AFR that the Property appeared vacant and AFR's nonrenewal of the policy, thus cutting off traceability.

9

Robinson also alleges that in January 2018, on the heels of the loan-modification agreement, Nationstar retained a company named "DIMONT as its agent to file a claim with AFR for wind damage to the [P]roperty" and "through DIMONT, informed AFR that the property was vacant and that the notice of claim also served as the notice of change of occupancy/risk." Aplt. Br. at 6. Robinson alleges that Nationstar "had no reasonable basis to inform AFR that a change in occupancy had occurred because it had just approved" the loan modification, so Nationstar "knew that the [P]roperty was occupied." *Id.* at 24. Robinson concludes that "[t]he only reasonable inference that may be drawn" is that Nationstar "intended to interfere with the relationship" between Terrell and AFR, thus demonstrating "a causal connection." *Id.* Robinson's record citations for these allegations do not support them. The notice of claim DIMONT filed as Nationstar's agent contains boilerplate language stating that the notice "acts **in all appropriate circumstances** as a notice of change in the **occupancy/risk**." Aplt. App. vol. 4 at 96 (some boldface omitted). Because this language concerns occupancy *and* risk and is limited to "appropriate circumstances," it is not tantamount to informing AFR that the property was vacant.

Finally, Robinson contends she suffered "additional financial injury, stress and anguish . . . as a result of [Nationstar's] actions." Aplt. Br. at 20. To the extent she is suggesting that traceability may be found with respect to injuries she alleged in her

complaint,[3] she has waived appellate review because she did not rely on those injuries in her supplemental brief on traceability and, unsurprisingly, the district court did not consider them. *See Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 n.3 (10th Cir. 2012) (explaining that failure to raise issue at appropriate time in the district court waives appellate review). For the same reason, she has waived appellate review of any injury she may be claiming she sustained due to the increased balance and interest rate Terrell incurred as part of the loan modification agreement—she did not rely on any such alleged injuries in her supplemental brief on traceability, and the district court did not consider them. *See id.*

In sum, we conclude that the district court correctly determined that Robinson lacked standing to assert her FHA claim and therefore properly granted Nationstar's motion for summary judgment on that claim.

## IV

Robinson argues that because she had standing to bring her FHA claim, the district court should have granted her motion for summary judgment on that claim and should have exercised supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a). This argument necessarily fails because we have

---

[3] In her complaint, Robinson claimed injuries stemming from listening to Terrell talk about the stress defendants' actions had caused—"struggl[ing] to pay her bills" and going "without food and medications to meet the demands of Nationstar's oppressive house payment." Aplt. App., vol. 1 at 28, ¶ 78. Robinson also alleged she had "diverted financial resources" to help Terrell and suffered emotional and mental distress from "listening to and watching the impact of the stress of the situation on her mother." *Id.*

determined that the district court correctly concluded Robinson lacked standing to bring her FHA claim. Thus, the court properly denied her motion for summary judgment on the FHA claim and, having dismissed the sole federal claim, reasonably declined to exercise supplemental jurisdiction over the state law claims. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (internal quotation marks omitted)).

## V

We affirm the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge